BURKE, Respondent, v. ST. LOUIS SOUTHWEST-
ERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, November 27, 1906.

1. **NEGLIGENCE: Contributory Negligence: Prima Facie Case.** In an action against a steamboat company for injuries received by plaintiff while attempting to board a steamboat, the evidence is examined and held sufficient to support a finding that the landing where the plaintiff attempted to board was not reasonably safe and that the plaintiff was not guilty of contributory negligence in the matter in which he attempted to board the boat.

2. ———: ———: **Weight of Evidence.** In such case where there was substantial evidence of a character not inherently impossible to show that the plaintiff was innocent of negligence in attempting to board the boat, the verdict will not be disturbed though witnesses swore to a contrary state of facts.

3. ———: **Carrier of Passengers.** And in such case where an instruction for plaintiff speaks of him as proceeding down the landing "for the purpose of getting on the boat as a passenger," and holds the defendant liable for failure to exercise ordinary care, the instruction is not open to the objection that it assumed the relation of carrier and passenger to exist between the plaintiff and defendant.

4. ———: ———: **Safe Landing.** And it is the duty of a steamboat company to employ ordinary care to keep its landing,

where it is its custom to permit passengers to take passage on its boat, safe for that purpose, and it is liable for injuries to one attempting to take passage, caused by its failure to employ such ordinary care.

5. **PRACTICE: Personal Injuries: Excessive Verdict.** In an action for injuries to plaintiff where it was shown that the plaintiff's leg was broken, that he was laid up for four months and disabled for nine months, that his leg was permanently shortened and that he earned at the rate of $4.40 a day, a verdict for $4,500 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*S. H. West,* with *Carter, Collins & Jones* for appellant.

(1) The court erred in refusing defendant's instruction in the nature of a demurrer to the evidence at the close of plaintiff's case and in refusing a similar instruction at the close of the entire case. (2) The court erred in granting plaintiff's first instruction. Schepers v. Railroad, 126 Mo. 665; Schaefer v. Railroad, 128 Mo. 64; Barth v. Railroad, 142 Mo. 535; Raming v. Railroad, 157 Mo. 477; Webster v. Railroad, 24 L. R. A. 521; Dodge v. Steamship Co., 148 Mass. 209; Merrill v. Railroad, 139 Mass. 238; Com. v. Railroad, 129 Mass. 500; Warren v. Railroad, 8 Allen 227; Traction Co. v. State, 28 Atl. 397; 2 Shearm. and Redf. on Negligence (4 Ed.), sec. 488; Pattison, Ry. Accident Law, secs. 210-214; 2 Am. and Eng. Ency. of Law, 742. (3) The damages are excessive and the result of bias, passion or prejudice on the part of the jury. Fairgrieve v. Moberly, 29 Mo. App. 151; Haynes v. Trenton, 108 Mo. 123; Johnson v. Railroad, 67 Minn. 264; Slette v. Railroad, 53 Minn. 345; Lombard v. Railroad, 47 Ia. 494; Nicholds v. Plate Glass Co., 126 Mo. 55; Chitty v. Railroad, 166 Mo. 435; Hurt v. Railroad, 94 Mo. 255; Dwyer v. Hickler, 43 N.

Y. 221; Collins v. Albany, 12 Barb. (N. Y.) 492; R. R. v. Fox, 11 Bush. 495; Chicago v. Hughes, 87 Ill. 94; Chicago v. Payzent, 87 Ill. 125; Covington v. Wear, 84 Ky. 267.

*A. R. Taylor* and *Howard Taylor* for respondent.

(1) The appellant presents as his first ground of complaint that his demurrer to the evidence should have been sustained. This clause, like the general welfare clause of the Constitution, is made to do service to meet all contingencies. (2) This action is not based upon the relation of accepted passenger and carrier, but upon the relation of an intending passenger, going to take passage on a carrier at the usual place of accepting passengers. He was lawfully passing over the way provided for the carrier to receive passengers. He only claims in his petition and instructions that the carrier must use reasonable and ordinary care due to any person lawfully on its station. (3) All persons going to the carrier's station where passengers usually take passage for the purpose of taking passage or other lawful purpose or business are entitled to all the care this plaintiff asked, either in his petition or instructions. (4) This principle of law is recognized so generally that citation of authorities would seem superfluous. Murphy v. Railroad, 43 Mo. App. 342; Alben v. Railroad, 103 Mo. App. 308; Omarn v. Railroad, 102 Mo. App. 202; McCarty v. Railroad, 105 Mo. App. 601; Chance v. Railroad, 10 Mo. App. 357; Stafford v. Railroad, 22 Mo. App. 333; Sargent v. Railroad, 114 Mo. 348; Fullerton v. Fordyce, 121 Mo. 1; Waller v. Railroad, 59 App. 410. (5) The court is asked to apply the scales to this verdict and see if the jury were warranted in awarding it, and to declare the jury governed by passion or prejudice in awarding a verdict of $4,500. Furnish v. Railroad, 102 Mo. 438, an injury to a wife's spinal column; verdict, $15,000, remittitur $5,000, case approved. The husband, for the in-

jury to the wife, was awarded $5,000 for loss of services and $800 expenses, and the verdict approved. Furnish v. Railroad, 102 Mo. 677; Burdette v. Railroad, 123 Mo. 236; Chitty v. Railroad, 166 Mo. 443; Murkey v. Railroad, 185 Mo. 365; Devoy v. Railroad. 192 Mo. 227; Perritte v. Kansas City, 162 Mo. 203; Barr v. City, 121 Mo. 33; Railroad v. Taylor, 68 Ill App. 613; Heyde v. Railroad, 102 Mo. App. 542.

GOODE, J.—Appeal from a judgment for forty-five hundred dollars in an action for damages due to a personal injury. The accident happened on July 20, 1904, at a steamboat landing at Gray's Point. Defendant is a common carrier which makes use of steamboats to transport passengers across the Mississippi river from said landing to Thebes and other points in Illinois. It seems that, in the main, the passengers are carried over on defendant's railroad cars, which are loaded on the boats; but the evidence shows it was the custom to receive foot passengers on the boats, too. Defendant's railroad track runs down the slope of the bank of the river at Gray's landing; but on account of the rise and fall of the river at different stages of the water, the track laid on the ground is not always available for loading cars on the boats. That is to say, the river at certain stages will rise so high as to cover part of the tracks, and to overcome this obstacle, defendant used a device known as a "cradle," which was a short, detached railway track made to fit over the ground track and with rails extending to the boat called "feather rails." These feather rails lap over the rails of the regular track of the railroad and are thinned to an edge so a car can be shoved along the main track until it reaches this edge, when it will proceed along the cradle track to the boat. The two feather rails of the cradle track were held together by iron rods extending from one to the other, called "bridle rods." The cradle was adjustable and could be shoved up and down the regular inclined track

which ran down the river bank, so cars could be moved onto the boat at any stage of the water. Adjusting the cradle track at the right point was called "staking" it and was done in this manner: A wooden beam would be put against the land end of the cradle and the other end of the beam attached to a locomotive, which would push the track toward the river or pull it away as might be necessary; the steamboat pulling or pushing on the cradle at the other end. Testimony shows it was customary to receive foot passengers on steamboats at the landing where the cradle was operated, though they were generally received at a more commodious landing further up the river. The testimony showed, also, it was the custom to permit foot passengers to walk down the railroad track and onto the boat over the cradle. Witnesses for the plaintiff testified to this custom. Plaintiff swore that in going aboard one of defendant's boats, he walked along the ties of the regular track until he came to the cradle and had just stepped over the first bridle rod, or iron bar used to hold the two feather rails in place, when the steamboat, which was in the act of landing, jostled against the river end of the cradle, pushing it further up the regular track, thereby forcing the second bridle rod against plaintiff's ankle, driving his foot between the rod and a tie, breaking both bones of his leg five and one-half inches below the knee and giving him a severe cut in the groin. He was in the company of another man who was not hurt. The allegations of negligence in the petition are that the means provided for boarding the boat were defective and dangerous and defendant was negligent in that regard and also in failing to warn plaintiff of the dangerous condition of the means to board the boat, and permitting him to go on the cradle without warning. There was evidence that boats struck the cradle and jostled it frequently, and one witness swore this occurred nearly every time a boat landed. The defense was a general denial and a plea of contributory negligence; the latter consisting of

an averment that plaintiff negligently went on the inclined tracks over which defendant moved its cars and locomotives to and from its transfer boats, and negligently stepped on the cradle while it was in motion. The testimony for defendant was that plaintiff walked on the cradle while it was being staked; that is, while a locomotive was shoving it and a steamboat backing and pulling on it; that his companion observed the movement of the cradle and stepped aside, thereby escaping injury. There was evidence to show plaintiff had not bought a ticket before starting to board the boat, though notices were posted requiring passengers to do so. Other evidence was that passengers were accustomed to pay their fare after they got aboard. There is contradictory evidence regarding whether or not the boat plaintiff was taking passage on was bound for Thebes, his destination, or Gale; an immaterial question, though defendant lays some stress on it. The errors assigned are these: A verdict should have been directed for defendant, the first instruction for plaintiff was incorrect, the verdict is so glaringly against the weight of the evidence that prejudice in the jury is demonstrated and the damages assessed are so excessive as also to prove prejudice. Plaintiff lay in a hospital for nearly four and one-half months on account of his injury; his expenses there were $108 and his bill to the physician who attended him $35. He was kept from work nine months, his injured leg is slightly shorter than the other and his physicians, or one of them, swore it was permanently weakened and would pain him at changes in the weather. The testimony goes to show the leg hinders plaintiff in climbing and therefore hinders him in working or procuring work at his trade of structural iron worker, but has not prevented him since his recovery from earning as much at his trade, when he could find employment, as he earned before the accident; that is, $4.40 a day. The first instruction for plaintiff told the jury, in substance, that if plaintiff was injured by a movement of the cradle and in

the manner sworn to by him, while he was walking down the inclined track and along the cradle for the purpose of taking passage on the boat, and while he was in the exercise of ordinary care, and if the jury found the way down said incline and over the cradle was not reasonably safe for passengers by reason of the movement of the bridle rod over it, then plaintiff was entitled to recover. Seven instructions were granted to the defendant, covering the different phases of defense. No instruction requested by it was refused, except the one for a verdict in its favor. The jury were told that if plaintiff voluntarily exposed himself to danger on the inclined track, he did so at his own risk and in that event a failure of defendant's servants to notify him of his danger, if they were aware of it, did not render defendant liable; that plaintiff was bound to exercise ordinary prudence in walking down the incline, and though the jury might believe the approach to the boat was dangerous, yet if they believed the accident was attributable to a want of ordinary care on plaintiff's part, he could not recover unless defendant was guilty of such gross negligence as implied a willful or wanton injury; that to authorize a recovery by plaintiff it must appear, not only that the railway company was negligent, but that plaintiff employed all reasonable means to forsee and prevent the injury, or else that it was caused by the willful or wantonly reckless acts of the servants of the company, and that the burden of proving negligence on the part of defendant's servants by the weight of the evidence, rested on plaintiff.

1.  To hold defendant was entitled to an order for a verdict, we must find the only inference to be drawn from the evidence is either that the inclined way to the boat was reasonably safe, or plaintiff was hurt because of his own carelessness. We find testimony in the record that accidental shovings of the cradle along the regular track by steamboats were of common occurrence, and

120 App.—44

cannot declare such a means of getting on defendant's boats was reasonably safe for foot passengers; who, as the evidence shows, were constantly received on boats from the cradle track. It looks to us like the appliance was a dangerous one and very likely to lead to serious accidents. Nor can plaintiff be held, as a legal conclusion, to have caused his injury by his own lack of care, unless we ignore the testimony he gave. In relating the circumstances of the accident, he swore he walked on the cradle while it was at rest, and a sudden lurch of the boat against it, caused the bridle rod to catch and break his leg. The accident could have happened in that way without violating a physical law. The testimony of other witnesses that the cradle was being shoved by a locomotive and pulled by the boat when plaintiff stepped on it, only raised an issue of fact for the jury to determine, subject to the revisory control of the trial court.

2. As to the defense of contributory negligence being supported by so great a weight of evidence as to prove the verdict was not given on a fair finding of the facts, but from the jury's bias or prejudice, we answer that the plaintiff gave substantial evidence and of a character not inherently impossible, to show he was innocent of negligence; hence the jury had the right to believe him, though the other witnesses swore to the contrary. [Mauermann v. Railroad, 41 Mo. App. 348; Hirsch v. Grand Lodge, 78 Mo. App. 358.]

3. The main instruction for plaintiff is assigned for error on the ground that it assumes the relationship of carrier and passenger existed between plaintiff and defendant when the former was hurt; whereas it is agreed that he was not a passenger, having neither paid his fare not signified to defendant an intention to take passage on the boat. Whether plaintiff was a passenger as yet or not, it is apparent that this criticism is immaterial; for the instruction speaks of plaintiff proceeding down the inclined way "for the purpose of getting on the

boat as a passenger." Moreover, the instruction held defendant liable for failure to exercise ordinary care in providing a reasonably safe way for plaintiff to use in going on the boat; not the high care a carrier must observe for the safety of a person who has already put himself in its charge as a passenger. If plaintiff was not a passenger, but was walking along a way which it was defendant's custom to permit the use of in taking passage on its boats, and plaintiff was using it for that purpose, defendant is liable for the injury he suffered if due to its failure to employ, at the least, ordinary care to keep the way safe; and that is all we need to say in this case. [Dodge v. Steamboat Co., 148 Mass. 214; Wood v. Railroad, 181 Mo. 433, 81 S. W. 152; Fullerton v. Fordyce, 121 Mo. 10, 25 S. W. 587.]

4. The amount of the verdict does not impress us as being large enough to show improper feelings influenced the jury and make it incumbent on this court to order a reduction. The injury was great. Plaintiff was laid up four months and disabled twice as long. There is evidence to show the broken leg is permanently shortened and weakened. He lost in earnings at the rate of $4.40 a day for nine months; or more than one thousand dollars, and paid out for treatment and attendance one hundred and forty-three dollars. The question of the damage inflicted on a person by a personal injury is peculiarly one to be decided by a jury. In all its aspects it is a question of fact to be determined in the light of that common knowledge which is derived from experience and observation. Moreover, the jury see the plaintiff and are thereby assisted in coming to a just conclusion about the extent of his injury. No doubt an assessment of damages may call for judicial interference as excessive but, in our opinion, the one in the case at bar does not. To support this ruling we refer to Devoy v. Railroad, 192 Mo. 197, 91 S. W. 140; and the review of various verdicts in the opinion.

The judgment is affirmed. All concur.