GERTRUDE RATTAN, Respondent, v. CENTRAL ELECTRIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, October 1, 1906.

1. **PASSENGER CARRIERS: Evidence: Physical Facts: Credibility: Jury.** Direct testimony which contradicts conceded and undisputed facts should be disregarded by courts and juries; but on a review of the evidence it is held that though the occurrence of the plaintiff's injury is not what might have been expected, yet it was not incredible and the question of credibility of the conflicting testimony was for the jury.

2. **———: Defective Step: Scienter: Proof.** Proof of the injury of a passenger makes a prima facie case without any direct proof of contributory negligence in that respect; and it devolves upon the carrier to exculpate himself by showing proper inspection to discover the defective implement causing the injury.

3. **———: Negligence: Definition of: Instruction.** Negligence is want of a proper degree of care, and where an instruction defines the degree of care required, the jury can not be misled by failure to define negligence; besides, the defendant should ask for additional instructions in that respect, since mere non-direction is not error; nor can a defendant complain of such non-direction where he submits the issue of negligence in his own instructions without further definition.

4. ————: **Damages: Verdict: Excessive: Trial and Appellate Practice.** A verdict attacked as excessive and showing bias on the part of the jury is not interfered with since it passed the trial judge who heard the evidence and saw the witnesses.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*Frank G. Johnson, John H. Lucas* and *Henry S. Conrad* for appellant.

(1) The court should have given appellant's instruction in the nature of a demurrer to the evidence at the close of plaintiff's case and at the close of all the evidence in the case. (a) Respondent's theory of the accident is contradicted by the physical facts of the case. Spiro v. Transit Co., 102 Mo. App. 250; Spohn v. Railroad, 87 Mo. 74; State v. Fannon, 158 Mo. 149; Payne v. Railroad, 136 Mo. 562; Hook v. Railroad, 162 Mo. 569; Nugent v. Milling Co., 131 Mo. 241; Kelsay v. Railroad, 129 Mo. 362; Oglesby v. Railroad, 177 Mo. 272; Weaver v. Railroad, 60 Mo. App. 207. (b) The exact cause of the accident, under the testimony on behalf of respondent, is left to conjecture. Warner v. Railroad, 178 Mo. 125; Smart v. Kansas City, 91 Mo. App. 586; Epperson v. Tel. Co., 155 Mo. 346; Smith v. Bank, 99 Mass. 605; Searles v. Railroad, 101 N. Y. 661; Spiro v. Transit Co., 102 Mo. 250. (c) The defendant was guilty of no negligence. 6 Cyc. of Pleading and Practice. 590; Goldsmith v. Building Company, 182 Mo. 597; Becker v. Building Company, 174 Mo. 246; Leslie v. Railroad, 88 Mo. 50; Gilson v. Railroad, 76 Mo. 282; Thompson v. Railroad, 140 Mo. 125; Werbowlsky v. Railroad, 86 Mich. 236; Carter v. Railroad, 42 Fed. 37; Palmer v. Railroad, 206 Pa. St. 574; Faulkner v. Railroad, 187 Mass. 254; Howell v. Traction Co.,

202 Pa. St. 338; Hagerman v. Railroad, 16 Barber 353; Anthony v. Railroad, 27 Fed. 725; Hitchcock v. Railroad, 3 N. Y. Supp. 218. (d)  There is no evidence that the defendant knew or could have known of any defect in the step of the car or had time to remedy the same.  Crane v. Railroad, 87 Mo. 588; Wojtylak v. Coal Co., 188 Mo. 260; Edwards v. Railroad, 112 Mo. App. 658; Dutro v. Railroad, 111 Mo. App. 258; Furber v. Bolt and Nut Co., 185 Mo. 301; Thompson v. Railroad, 140 Mo. 125.  (2)  The court erred in giving instructions.  (a)  Instruction number 1, given on behalf of plaintiff, was error.  Wojtylak v. Coal Co., 188 Mo. 260; Edwards v. Railroad, 112 Mo. App. 658; Dutro v. Railroad, 111 Mo. App. 258; Furber v. Bolt and Nut Co., 185 Mo. 301; Thompson v. Railroad, 140 Mo. 125.  (b) Negligence is not defined, neither is the jury instructed as to the degree of care to be exercised by defendant. Magrane v. Railroad, 183 Mo. 119; Yarnall v. Railroad, 75 Mo. 575; Ravenscraft v. Railroad, 27 Mo. App. 617; Railroad v. Wood, 81 S. W. 1187, 90 N. Y. Supp. 336; Dougherty v. Railroad, 97 Mo. 647; Gilson v. Railroad, 76 Mo. 282.  (3)  The verdict is opposed to the weight of the evidence to such an extent that it is the unmistakable result of bias.  O'Hara v. Iron Foundry Co., 66 Mo. App. 53; Friesz v. Fallon, 24 Mo. App. 439; Hickman v. Railroad, 47 Mo. App. 65; Walton v. Railroad, 40 Mo. App. 544; Weaver v. Railroad, 60 Mo. App. 210. (4)  The verdict is excessive.  Stoetzele v. Swearingen, 90 Mo. App. 588; Haynes v. Trenton, 108 Mo. 123.  (5) The court erred in overruling defendant's motion for a new trial.  Stoetzele v. Swearingen, 90 Mo. App. 588; Haynes v. Trenton, 108 Mo. 123; Foley v. Alkire, 52 Mo. 317; Spohn v. Railroad, 87 Mo. 74; Hook v. Railroad, 162 Mo. 569.

*Reed, Yates, Mastin & Howell* for respondent.

(1)  Just what law of physics is contravened by

"respondent's theory of the accident" is not disclosed by appellant's brief. No case cited by counsel under this head, even by remote analogy, can be said to be an authority in this case. Spiro v. Transit Co., 102 Mo. App. 263. (2) The doctrine of *res ispa loquitur* applies, and the allegation of notice contained in plaintiff's petition was mere surplusage and may be wholly rejected. Och v. Railroad, 130 Mo. 34; Tateman v. Railroad, 96 Mo. App. 453; McCarty v. Railroad, 105 Mo. App. 603; Aston v. Transit Co., 105 Mo. App. 233; Thompson v. Railroad, 111 Mo. App. 475; Chartrand v. Railroad, 57 Mo. App. 425; Clark v. Railroad, 127 Mo. 197. (3) Appellant's criticism of respondent's instruction number 1 is not well taken. It is not necessary to define the word "negligence," so says the Supreme Court. Sweeney v. Railroad, 150 Mo. 401; Follingham v. Transit Co., 102 Mo. App. 584. Moreover, mere non-direction is not error. Appellant could have asked for a definition had they desired one. Prismeyer v. Transit Co., 102 Mo. App. 523, citing Feary v. O'Neill, 149 Mo. 467; Edelman v. Transit Co., 3 Mo. App. 506; Tabler v. Railroad, 93 Mo. 86; Farris v. Railroad, 80 Mo. 328; Barrey v. Railroad, 98 Mo. 62; Kennedy v. Railroad, 36 Mo. 351; Huelsenkamp v. Railroad, 34 Mo. 45. (4) The verdict is fully supported by the evidence.

BROADDUS, P. J.—Suit for damages for personal injury. For convenience we adopt the statement of plaintiff setting out in substance her cause of action, viz.: "The petition . . . recites that on the 16th day of December, 1903, the plaintiff was a passenger on one of defendant's southbound cars on Grand avenue in Kansas City, and that while in the act of alighting therefrom at Twelfth street and Grand avenue, and while the car was stopped for the purpose of permitting her to

do so, and while in the exercise of ordinary care and caution on her part, she caught the heel of her left shoe upon a sharp and jagged piece of steel, iron or other metal projecting from the step of said car, and was thereby thrown violently forward and upon the pavement of said Grand avenue. That defendant carelessly and negligently suffered and permitted the said step of said car to become and remain in a dangerous, defective and unsafe condition, in that said step had been carelessly and negligently suffered and permitted by defendant to be and remain in an old, worn and dilapidated condition, and the iron and steel parts thereof worn, broken and bent in such a manner that there were sharp and rough places thereon liable to cause the injury of passengers alighting from said car." The evidence of plaintiff tended to prove the allegations of her petition. The contention of the defendant is that plaintiff's theory of the occurrence is contradicted by the physical facts of the case.

The plaintiff weighed about one hundred pounds and was compelled to use a crutch in walking, the result of an injury she had suffered in her girlhood. She stated substantially that as she came to the step to alight she was facing west and that she took hold of the handle on the right side of the car, put her left foot onto the edge or broken part of a piece of metal which projected up an inch or an inch and one-half and which pushed into the heel of her shoe; and that as she started to step to the ground the heel of her shoe was held by the projection and she was thrown upon the street and that the heel of her shoe remained fastened to the metal after she had fallen. The metal on the step was shown to be what was known as the Mason Safety Tread, fastened to the top of the wooden step of the car. She was corroborated by other witnesses to the effect that while she was lying on the ground her foot was still held fast by said projection, and that there was an indenture in the

heel of her left shoe which might have been made by the projecting metal.

On cross-examination the plaintiff at first stated that the edges of the metal plate were projecting upward, and that they were not smooth. She was asked if the edges on the plate were smooth or otherwise. She answered: "No, sir; it was not smooth. Kind of broken." She was then asked: "Was it an even surface on the edge of the plate or not?" She answered: "Yes, I believe it was." Question: "Now, what part of this plate was the piece that caught your shoe on?" Answer: "On the back part." Question: "On the back part?" Answer: "Yes, sir." The answers appear somewhat contradictory, but it is evident that plaintiff meant to say that the outer edge of the plate was smooth but that the back edge was broken and rough.

A step with a safety tread of the kind was brought into court which appeared to be in good condition, but plaintiff and another witness testified that it was not the one in controversy. But certain of defendant's witnesses stated that it was the same. It appeared, however, that if it was the same, it had been painted since the occurrence.

One of defendant's witnesses described the plate in controversy as follows: "They are made of rolled plate steel. They are rolled with a little V-shaped corrugation in them just as shown here (alluding to the one present) and then there is a dovetail formed in between the V-shaped places by a thin edge — a little plane, still extending up, with a heavy dovetailed plate longitudinally in between — as you can see there, just about three-eighths of an inch wide. Then in this little pocket, or dovetailed corrugation there is strips of lead fastened in there, so that the lead comes even with the top edge of that little strip of steel flange that projects up over the main plate. The lead is put in, as a non-slipping material, and the steel is just simply to reinforce the lead, and

to keep it from mashing out." The witness who was a master mechanic was asked: "What is the purpose of the lead being put in there?" Answer: "The lead is put in because it is a non-slipping material, and if you don't confine it in some way or another, it is soft you know, and it will gradually mash away, and holes be worn in it, so that it is confined in this little strip, and the least quantity of steel is put up to come in contact with it—it is simply to protect the sides of the lead."

We gather from the description that the metal plate in question was merely a frame adapted to the purpose of holding the lead in place. That the parts inclosing the lead are made of thin steel. If the lead should be worn or displaced this thin frame would extend above the surface. We take it for granted that as a general rule all mechanical contrivances are liable to change and deterioration from use. And it is plain that the one in dispute is no exception to the rule. We think it possible that the lead in the metal frame had become worn or displaced so as to have left the thin edge of the plate extending above the surface in its worn state, and that thus exposed it would become broken and in that condition have caught and held the heel of the plaintiff's shoe as detailed in her testimony.

But it is insisted that if the occurrence, as plaintiff gave it, was not impossible, it was improbable and for that reason the finding should be set aside, as it was overborne by contrary evidence. In State v. Fannon, 158 Mo. 149, the court held that the statement of witnesses that a wagonload of chips was only worth five or six cents "is utterly incredible." In Payne v. Railroad, 136 Mo. 562, it was held: "The direct testimony of a party which is contradictory of, and in opposition to, conceded and undisputed physical facts, should be disregarded by both courts and juries." Hook v. Railroad, 162 Mo. 569, and other cases cited, assert the same principle. In Spiro v. Transit Co., 102 Mo. App. 263,

the testimony of the plaintiff was that while his wagon was moving on defendant's tracks it was struck behind by a moving car which had the effect of reversing, end for end, both wagon and team. While the court was of the opinion such a freakish effect might have been the result of the stroke, it was unable to conceive how it could have so happened.

In order to have a full understanding of the occurrence it will be necessary to state the evidence corroborating that of the plaintiff more in detail. Mrs. Thomas Rattan, a sister-in-law of plaintiff, who was present stated that, she did not notice plaintiff when she got off the car, but, "looked down (she being still on the car) and saw that she had fallen and twisted her left foot around—she had caught her left foot on the step." "The left foot was up on the step; it was caught." Question: "What was it caught on?" A. "On a piece of iron that was on the step; the step was worn out; along the center of it there was a worn condition, and there was a piece extending up, and that was what she caught her heel on. She took her hand and pulled her heel off the piece of iron or whatever it was." Question: "What condition was the edge of the plate when your sister was caught?" A. "It was all worn and rough. . . . I noticed that there was a piece sticking up."

Mrs. Lulu DeCorum testified that she got off the car before plaintiff and that her dress got caught and torn on a piece of iron that was standing up on the step about middle way; that while she was fixing the binding of her dress that had been torn she looked around to see where the girls were and saw Miss Rattan was lying on the ground with her foot caught on the step, "and my sister [Rattan] and a couple of other fellows was helping her up." Question: "Where was her feet or either of them?" A. "Her left foot on the ground, her right foot upon the piece of iron, caught." Ques-

tion: "You mean on that part of the step on which you caught your dress?" A. "Yes, sir." "She reached up and took her foot down."

It was shown that her ankle was sprained and that her hip was injured. The distance from the step of the car to the ground is not very great, probably about one foot. Although in the usual course of affairs the occurrence is not what might have been expected, yet it was not incredible. We can see that a jagged thin piece of iron standing above the surface of the step might penetrate the heel of a woman's shoe when she put her whole weight upon the projection and throw her down, and that it might retain its hold after she fell, as she would not be over a foot below the step after she reached the ground. The evidence of the woman witness who preceded plaintiff that the projection caught and tore her dress when she was in the act of alighting from the car, was strongly corroborative of plaintiff's description of the condition of the steps. And under the circumstances we do not believe that we would be justified in branding the three witnesses for plaintiff, who practically agree as to what occurred, as liars. It was for the jury to say which set of witnesses told the truth as between those for plaintiff and those for the defendant. And resting alone on plaintiff's evidence, in so far as the point made, upon which the case must stand or fall, we said in a case similar upon principle that "So frequently do unlooked for results attend the meeting of interacting forces that courts, in such cases, should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for their entertainment, by reasonable minds, or any other." Lang v. Railroad, 115 Mo. App. 489.

The point made that, "there is no evidence that the defendant knew or could have known of any defect in the step of the car, or had time to remedy the same," is

not well taken. The plaintiff made out a prima facie case without any direct proof of actionable negligence in that respect. *Res ipsa loquitur.* Proof of an injury of a passenger on a railroad, occasioned by the fall of a ventilating window, cast the burden of proof on the carrier to disprove the negligence. [Och v. Railway, 130 Mo. 27.] "When a prima facie case of the defect in an appliance is made whereby injury occurs, it devolves upon the owner to exculpate himself showing proper inspection." [Tateman v. Railway, 96 Mo. App. 448.]

Instruction number one, given at the instance of plaintiff, is criticised because it fails to define negligence. The instruction seems to be faulty in that respect, and those given at the request of defendant are also faulty in that particular. The omission was mutual. The same question arose in Sweeney v. Cable Co., 150 Mo. 385, where it was held, in speaking of negligence, that "This is a word the meaning of which is well understood and no definition of it was necessary. As used in the instruction it could not have been misunderstood by the jury, or in any way have misled them." However, the jury was properly instructed as to what constituted reasonable care. It is said: "There are no degrees of negligence. There are degrees of care, and a failure to exercise that proper degree of care the law requires is negligence." [Magrane v. Railway, 183 Mo. 119.] The quotation from said instruction in part as follows: 'and that defendant was careless and negligent in operating said car with said projecting metal on said step, and that the same was liable to catch the shoe of a passenger exercising ordinary care in leaving the car, and that defendant knew, or in the exercise of ordinary care and diligence might have known, that said piece of metal did project from the step of said car, long enough to have remedied the same before the happening of said injuries, then the jury will find for plaintiff." As the instruction fully defined the degree of care resting on the defendant,

the absence of which was negligence, the jury could not have been misled by the omission. The St. Louis Court of Appeals in Priesmeyer v. Transit Co., 102 Mo. App. 518, held that, if a defendant had desired a more specific definition of what constituted reasonable care than contained in the charge, it was its right to ask therefor; that "mere non-direction was not error," quoting from Feary v. O'Neill, 149 Mo. 467.

The defendant's fifth instruction contains the following: "Before she can recover in this case, you must not only find that the defendant . . . was negligent in the particular and specific respects submitted in these instructions, but you must further find that such negligence was the direct cause of her injury." It seems, judging by said instruction, that defendant was satisfied to submit the issue of negligence to the jury on the presumption that it was sufficiently informed and capable of determining its duty in that respect.

The jury returned a verdict for plaintiff in the sum of $5,000. While the motion for a new trial was pending the plaintiff entered a remittitur of record in the sum of $1,500, and judgment was rendered by the court for $3,500. The verdict is attacked as excessive and as evidence of bias on the part of the jury. The judge before whom the case was tried thought otherwise or else he would have set the verdict aside. The evidence was conflicting as usual in such cases, but it was the province of the jury to pass upon the credibility of witnesses. There was ample evidence, if plaintiff and her witnesses are to be believed, to support the finding. The judge who tried the case, who heard all the testimony and saw all the witnesses, was much better prepared to pass upon the question than we are, and in the absence of dereliction of duty on his part in that respect we decline to interfere in the matter.

The cause is affirmed. All concur.