SAMUEL R. BUSSELL, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, May 20, 1907.

1. **PASSENGER CARRIERS: Evidence: Demurrer.** The evidence relating to the injury of plaintiff in the caboose of a freight train is examined in connection with the physical facts and the case is held properly sent to the jury.

2. ———: **Injured Passenger: Prima Facie Case.** A passenger showing himself injured by a sudden and violent stopping of a train makes out a prima facie case which casts the burden upon the carrier to show that the accident was not the result of a want of the care and skill required to be exercised; and the finding of the jury for the passenger on that issue entitled him to recovery.

3. ———: **Pleading: Issue: Instruction.** Instructions cannot enlarge pleaded issues; and on the pleading and evidence it is held the submission of the question whether plaintiff had one or two ribs broken by the injury was, practically speaking, merely technical.

4. **TRIAL PRACTICE: Argument Memorandum on Instruction: Influencing Jury.** On the back of a typewritten instruction appeared certain memorandum set out in the opinion that counsel had inadvertently made during the argument. *Held*, since the jury could not have been influenced thereby the fault was not reversible error.

5. ———: **Pleading: Different Counts: Election.** Where plaintiff sets out the same cause of action in different counts in somewhat different phraseology, he cannot be compelled to elect.

Appeal from Grundy Circuit Court.—*Hon. George W. Wannemaker,* Judge.

AFFIRMED.

*J. G. Trimble* and *Hall & Hall* for appellant.

(1) The court erred in overruling appellant's instruction in the nature of a demurrer to the evidence. (2) The plaintiff being accustomed to riding on freight

trains knew there was necessarily more or less jerking and jolting in starting and stopping the train, and assumed all the risk incident to riding on said train. There was no unusual or extraordinary jar or jolting of the train proven. Wait v. Railroad, 165 Mo. 612, and cases cited; Erwin v. Railroad, 94 Mo. App. 289, 297; and cases cited; Portuchek v. Railroad, 101 Mo. App. 52; Bartley v. Railroad, 148 Mo. 139; Stringer v. Railroad, 96 Mo. 299 and cases cited. (3)    It is a matter of common knowledge that jolting and jarring are incident to the operation of freight trains, and, therefore, negligence cannot be inferred from a jar by the stopping of such train.   Hedrick v. Railroad, 195 Mo. 117; Erwin v. Railroad, 94 Mo. App. 297; Portuchek v. Railroad, 101 Mo. App. 55; Guffey v. Railroad, 53 Mo. App. 468; Bartley v. Railroad, 148 Mo. 139, and cases cited; Grisamore v. Railroad, 118 Mo. App. 390.    (4)    It is the settled rule in this State that where plaintiff in his petition, as here, specifies the particular act or acts of negligence that he must be restricted to it.    Pryor v. Railroad, 85 Mo. App. 378; Jacquin v. Railway, 57 Mo. App. 320; Hite v. Railway, 130 Mo. 132; Bartley v. Railway, 148 Mo. 124; McManamee v. Railway, 135 Mo. 440.    (5)    The trial court erred in failing to require the jury to find separately on each count of the petition.    There was a general verdict without specifying on which count of the petition it was based. There were different causes of action stated in the two counts of the petition; one for the negligence of the employees in operating the train; the other for failure of appellant to properly equip its engine and cars composing the train.    The attention of the trial court was called to this error specifically in the motions for new trial and in arrest.    Owens v. Railway Co., 58 Mo. 386; Biglow v. Railroad, 48 Mo. 512 and cases cited; Pitts v. Fugate's Admr., 41 Mo. 405; State ex rel. v. Dulle, 45 Mo. 269; Johnson v. Bedford, 90 Mo. App. 47; Shuck v.

Pfenninghausen, 101 Mo. App. 700; State ex rel. v. Peterson, 142 Mo. 534; Bricker v. Railroad, 83 Mo. 391. The court erred in giving plaintiff's first instruction. McManamee v. Railroad, 135 Mo. 440; Breeden v. Mining Co., 103 Mo. App. 176; McCarty v. Hotel Co., 144 Mo. 402; Chitty v. Railroad, 148 Mo. 64; Bartley v. Railroad, 148 Mo. 139 and cases cited; Grisamore v. Railroad, 118 Mo. App. 390; Thompson v. Bucholz, 107 Mo. App. 125; Kirby v. Railway, 85 Mo. App. 350; Wright v. Fonda, 44 Mo. App. 642, and cases cited; Bank of Fitchburg v. Westlake, 21 Mo. App. 565; Conway v. Railway, 24 Mo. App. 235; Breeden v. Mining Company, 103 Mo. App. 179; Bank v. Murdock, 62 Mo. 70; Mansur v. Botts, 80 Mo. 658, and cases cited; Glass v. Gelvin, 80 Mo. 302. As the trial issues must be within the paper issues, instructions must be framed with regard to the paper issues made. Whipple v. Building & Loan Ass'n, 55 Mo. App. 558, and cases cited; Hemphill v. Kansas City, 100 Mo. App. 566; Thompson v. Bucholz, 107 Mo. App. 125. (6) The trial court erred in overruling defendant's demurrer for the further reason that the physical facts disprove Bussell's statement as to how the injury was sustained, and the court is not bound by such statements. Gurley v. Railway, 104 Mo. 233; Spiro v. Transit, 102 Mo. App. 250; Phippin v. Railway, 196 Mo. 343, and cases cited; Spuhn v. Railway, 87 Mo. 84; Yarnell v. Railroad, 113 Mo. 570; Gilpin v. Railroad, 197 Mo. 325; Dakan v. Mercantile Co., 197 Mo. 255. (7) The court erred in giving plaintiff's instruction numbered 9 with the memorandum on the reverse side thereof. It was evidently the notes made by some attorney as to the evidence or argument in the case and was clearly erroneous and prejudicial. Baker v. Rice, 52 Mo. 23; Harrison v. Hance, 37 Mo. 185; Heller v. Pulitzer Pub. Co., 153 Mo. 215; Kennedy v. Holliday, 25 Mo. App. 518;

Foster v. McO'Blenis, 18 Mo. 88; Padgitt v. Railroad, 159 Mo. 156.

*A. G. Knight* and *E. M. Harber* for respondent.

(1)   Where a railway company undertakes to carry passengers for hire upon its freight trains, it owes to such passengers the same duties as to care which the law exacts of it in the transportation of passengers upon passenger trains.   The only difference being that the passenger upon a freight train submits himself to the inconveniences and assumes whatever dangers, are necessarily incident to that mode of travel.   Whitehead v. Railroad, 99 Mo. 263; McGee v. Railroad, 92 Mo. 208; Wagner v. Railroad, 97 Mo. 512; Vancleave v. Railroad, 107 Mo. App. 96; Muelhansen v. Railroad, 91 Mo. 332; Buck v. Railroad, 46 Mo. App. 555; Therman v. Railroad, 72 Mo. 62; Berry v. Railroad, 124 Mo. 223.   (2) It is doubtless useless to waste time upon defendant's suggestions, that the petition in some parts said, there was one and in others, that there were two of plaintiff's ribs fractured, or that the   court erred in not requiring the jury to find upon each count separately. No such request was made by the plaintiff and doubtless, if it had would have been overruled, as it properly should.   Rinard v. Railroad, 164 Mo. 270; Schuler v. Railroad, 87 Mo. App. 618; Nolan v. Bedford, 89 Mo. App. 172; O'Neal v. Blase, 94 Mo. App. 648; McGuire v. Transit Co., 103 Mo. App. 459; Murphy v. Transit Co., 96 Mo. App. 272; Boyd v. Transit Co., 108 Mo. App. 303.   (3)   Defendant seems to seriously contend that some unintelligible memorandum, except to the maker, and possibly to him, made upon the back of the instruction number 9, was a very serious error, a comment if you please upon the evidence.   A sufficient answer to this objection of defendant, if indeed such objection deserves any answer whatever, is that defendant makes no complaint thereof until in its motion for a new trial.

(4)   That the facts established by plaintiff make not only a prima facie, but a substantial case upon which plaintiff was entitled to the judgment of the jury, is by the Dorsey and Harris cases, as well as the Fullerton case, supra, fully established.   Levels v. Railroad, 94 S. W. 275; Gannon v. Gas Co., 145 Mo. 502; Everman v. Eggers, 106 Mo. App. 732; Fullerton v. Carpenter, 97 Mo. App. 197; Veale v. Green, 105 Mo. App. 182; State v. Woodward, 171 Mo. 593; Holloway v. Kansas City, 184 Mo. 19.

BROADDUS, P. J.—This is a suit for damages for injuries alleged to have been received by plaintiff while a passenger on one of defendant's freight trains.   On the fifth of March, 1905, the plaintiff boarded defendant's freight train at the town of Gilman for passage to Trenton, Missouri.   He had intended to take passage on defendant's passenger train, but arrived at the station too late to do so.   He paid the usual fare between the points of passage.   Plaintiff's evidence tends to show that when the train arrived at Parkington, an intermediate station, he was injured by being thrown from his seat against a desk in the car, by the sudden and violent stoppage of the train.   The evidence tends to show that the sudden and violent stoppage of the train was unusual and unnecessary.   The evidence of the defendant was that the train did not stop at Parkington, but was only checked in its speed, which was accomplished in the usual and necessary manner and without any undue violence or suddenness.

The plaintiff had been a traveling salesman, had ridden on freight trains and was familiar with the methods used in stopping them and checking their speed, and the jolts and concussions resulting from such operations.   It was shown that it was against the printed orders and rules of the company for passengers to ride on the train in question, but there was evidence tend-

ing to show that both before and after the promulgation of said orders and rules persons were permitted by the conductors to take passage on it, on the payment of the usual fare.

Much of defendant's contention arises over disputed facts. In reference to such matters we will say at the outset, as the appellate courts of the State have said so often apparently in vain, that it is not the function of an appellate court to pass upon the preponderance of the weight of the evidence. We will therefore, for the purposes of the case, assume that plaintiff was familiar with the usual results accompanying the stopping or checking of a freight train; that the train in question did stop at Parkington; that defendant's agents and operators in charge stopped the train at Parkington in an unusually and unnecessarily violent manner; that plaintiff was injured thereby; and that he paid to the conductor the regular fare for his passage.

We will examine however the most strenuous contention of defendant, that the physical facts demonstrate that plaintiff could not have been injured as he claims he was. He testified that he was sitting on a seat that extended lengthwise of the car from four to six feet from a desk; that when the train came to a stop, the jar threw him against the desk and that he threw up his arms to prevent striking it. He said that he was sitting in the ordinary position; that in such position the desk would strike him near the pit of the arm; that he was about five feet and a half tall; and that his injury was about eight inches below his armpit. The evidence of defendant was that the bench on which plaintiff was sitting was, including the cushion, twenty-one inches high, and that the distance between the top of the cushion and the lower edge of the desk was eight inches and that the top of the desk was thirty five inches above the top of the floor. The conclusion defendant draws from these facts is that plaintiff could.

not have been projected by the force of the shock from four to six feet and have struck the desk eight inches inches under his armpit. That such would be an impossible result. That in order for this to be true his progress must have been upward, which was an impossibility. On the contrary it is claimed, and correctly, that the tendency under the force of gravitation would have been to carry him downward, unless the force had been so great that he was thrown upward and descended upon the desk. But defendant's theory has its weakness like most others of the kind. There is nothing in the evidence to show that the force of the concussion lifted plaintiff bodily from the seat and projected him against the desk. And, as it was shown that the ends of the cars were not injured, the inference is that the shock of the concussion was not so great as to produce such a result. But we can infer that the shock was so great as to throw him towards the desk without lifting him from the seat and that in throwing up his arm he elevated his body and was struck under and near his armpit as he stated. Although the manner of plaintiff's injury was not what might have been expected, yet it was not incredible and was therefore a question for the jury. [Rattan v. Railroad, 120 Mo. App. 270.]

As the defendant undertook for hire to carry plaintiff as a passenger, it was required to use the same degree of care as is required in the operation of its regular passenger trains, the difference only being he submitted himself to the inconvenience and danger necessarily attending that mode of conveyance. [Whitehead v. Railroad, 99 Mo. 263; Hedrick v. Railroad, 195 Mo. 104.] The plaintiff having shown that he was injured by the sudden and violent stopping of the train, made out a prima facie case, which cast the burden upon defendant to show that the accident was not the result of a want of the care and skill the law imposes upon a common carrier. [Redmon v. Railroad, 185 Mo. 1.] The de-

fendant sought to show that plaintiff's injury was the result of the ordinary stoppage of freight trains. But upon this issue the jury found for the plaintiff. The plaintiff being a passenger, he was therefore entitled to recover.

The plaintiff in the first paragraph of the first count of his petition alleges that he was thrown from his seat against the desk and his *ribs* broken. In the second paragraph, the allegation is that *one of his ribs* was broken, and such is the allegation in the second count of the petition. In plaintiff's first instruction, the question was submitted to the jury whether *one or more of his ribs* were broken. Plaintiff testified without objection that his ribs were broken. The instruction is criticized on the ground that plaintiff was permitted to recover for an injury to more than one rib whereas his petition only claims damages for injury to one rib. It is well settled that the issues of a case cannot be enlarged by instructions. It is true, technically speaking, the defendant put in issue not only that the defendant was not injured but also the extent of his injury. But it seems to us that as the evidence was admitted without objection and that the mattter was so insignificant that the jury would not have been influenced one way or the other — whether plaintiff had one or two ribs fractured. Practically speaking, the error was merely technical.

Specific objection is made to instruction number 9 given at the instance of the plaintiff. The objection does not go to what the instruction on its face contains, but to certain memoranda written on the reverse side of the paper. The writing on the back is as follows:

"Knight 7.50-8.20 I have 40 min.

Homer Hall 8.20 — quit 8.44.

McCall — You—.

Bussell & Thompson — Benedict.

Conductor's Book. Pick up or put out car at Brimson.

Receipts for rent — Bush Williams — Davidson —
Ray Sawyer Connor

Knowl Brown subpoenaed.

If cant show by Plff instruction not entitled to re-
cover give him verdict.

Hudson's refusal prevents plffs, recovery under
own instructions.

Says did not deny conv. at depot

Don't have Parkerton agent.

No right to discrimination

Trimble Contract act, by agents

If done it for Case would have charged no fare

Case Liar

Bussell contradict all these people."

The memoranda indicated that they were made
while the case was being argued to the jury as they re-
fer to Knight, one of the plaintiff's attorneys, and the
figures "7.50-8.20," indicate the time he began his argu-
ment and the time he closed it, and that the writer had
forty minutes, presumably, to make his argument. "Ho-
mer Hall (defendant's attorney) 8.20- quit 8.44," shows
that Hall commenced when Knight concluded his argu-
ment. There is a reference to Case, the station agent,
and other matters connected with the trial. Said Case,
defendant's witness, is characterized as a "liar," and
Bussell (plaintiff) contradicts all these people." We
have found in the books only one case where the circum-
stances were similar. In McLeod v. Railroad, 71 Iowa
138, 32 N. W. 246, the facts were the engineer of the loco-
motive was killed by the accident, and a coroner's in-
quest was held upon his body. By inadvertence this
evidence got among the papers that were taken by the
jury when they retired to consider their verdict and was
read by them. The evidence had not been introduced in
the trial. "It gave a particular and, in some respects,
a minute description and statement of matters pertain-

ing to the accident," and was "pertinent and material to the issues in the case, and capable of influencing adversely to plaintiff the minds of the jurors." The court held that a new trial should have been granted and said: "The evidence in question being capable of influencing the jury, and unlawfully before them, there can be no assurance that their verdict was the result of the consideration alone of the lawful evidence in the case." But this case is entirely different in all matters. Most of the memoranda is apparently meaningless, but evidently had some reference to the issues in the case. It does not purport to be notes of the testimony and does not bear that construction. But it is contended that in part it is a commentary on the evidence. It seems to us, however, that it is merely a short method adopted by the writer to aid him to remember the points of his intended argument. The writing certainly was not intended for the use of any person other than the one who made it. Putting it on the back of the instruction was an inadvertence. Instructions as a rule are typewritten on one side only and it is highly probable that it was never seen by the jury. It appears not to have been discovered until after the trial.

As we view the matter, we do not think it could have had any effect on the jury had they seen it; and, as we are to assume that they were at least men of ordinary intelligence, they knew that the writing was no part of their instructions. We would not be warranted in assuming that men of intelligence would resort to the memoranda for a guide to assist them in making out a verdict, especially in view of the fact that they must have known that it had nothing to do with the case. It did not tend to throw light on the facts and contained no declaration of law. And we are also to presume that the jury were not only men of intelligence, but conscientious as well. If they saw the writing, they knew it did not come from the court and that it was not intended

for their consideration.   While it is the duty of the courts to see that jurors shall not be subjected to influences that might cause them to be misled or their minds prejudiced one way or the other, at the same time they must be regarded as men of ordinary manhood until the contrary is shown.   The question here is not that an effort was made to mislead or prejudice the jury, but were they so mislead or prejudiced.   We do not think they could have been.   It would perhaps be the duty of the court, if a paper of the kind in question was purposely conveyed to the jury, to set aside the verdict, as an example for the future.   But to do so in this case will afford no example, because the occurrence was not the result of design but of inadvertence, and perhaps will never happen again.   We do not think the verdict should be set aside for that matter.

The defendant's objections to other instructions are not well founded.   And there is no merit in defendant's contention that the court committed error in refusing to give certain refused instructions.

The defendant also complains of the action of the court in failing to require the plaintiff to elect on which count he intended to rely, as requested.   There was no error in that respect.   The same cause of action is alleged in both counts, but stated somewhat differently. In such cases a plaintiff is not required to make his election.   The cause is affirmed.   All concur.