OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1904.

*· (Continued from Volume 184.)*

## REDMON v. METROPOLITAN STREET RAIL-WAY COMPANY, Appellant.

### Division Two, December 13, 1904.

1. **NEGLIGENCE:·Street Railway.** Street car companies are common carriers of passengers, and are held to the same degree of care and vigilance in preventing injuries to their passengers as is required of other railroads carrying passengers for hire; that. is to say, the highest care and skill that prudent men would use and exercise in a like business and under like circumstances.

2. ———: ———: **Prima Facie Case: Burden of Proof.** Where the defendant is in exclusive control of a street car, plaintiff makes out a prima facie case of negligence by showing that he was a passenger on said car and that while sitting in his seat therein he was injured by the sudden and abrupt stopping of the car, and the burden is cast upon defendant of showing that the accident was not the result of a want of that care and skill which the law imposes upon a common carrier.

3. ———: **Res Gestae Defined.** The *res gestae* are those circumstances which are the automatic and undisguised incidents of a particular litigated act, and which are admissible in evidence when illustrative of such act; indeed, in contemplation of law are· a part of the act itself.·

4. ———: ———: **As Evidence: Narrative.** The narrative of the conductor of a car to the plaintiff in explanation of how the accident happened which resulted in his injury, made at theι time he was being removed from the car on which he was`a ·passenger. at the time' of .the accident, is not admissible as a part of the *res gestae.*

5. ———: **Narrative: Made by Authority: Principal and Agent.** A statement made by the conductor to the injured passenger at the time the latter was being removed from the car, in explanation of how the car had been so suddenly stopped as to cause his injury, is not admissible in evidence on the ground that the conductor was the agent and representative of the company and made the statement by authority to a passenger· who had the right to demand the cause of his injury. The admission or declaration of· an agent binds his principal only when it is made during the continuance of the agency in regard to the transaction then depending; and this statement can not be said to be contemporary with the transaction and illustrative of its character, but was subsequent narrative of how it oc-curred.

6. **EXPERT TESTIMONY: Cause of Injury.** An expert medical man is competent to give his opinion, upon a hypothetical question, that an injury was the cause of a disease or condition found in plaintiff. But the hypothetical question .should be so framed as to require an opinion based on the facts in evidence.·

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

Reversed and remanded.

*John H. Lucas* for appellant.

(1) The court erred in refusing to sustain the demurrer offered, and to give the peremptory instruction, asked by the defendant herein, for the reason that the plaintiff is not entitled to recover. (a) The petition alleged specific negligence, and the burden was on

plaintiff to prove the same. Edens v. Railroad, 72 Mo. 213; Sawyer v. Railroad, 37 Mo. 259. (b) The evidence was insufficient to warrant a recovery or to shift the burden of proof from plaintiff to defendant. Yarnall v. Railroad, 113 Mo. 580; Booth, Street Railway, sec. 361; Lemon v. Chanslor, 68 Mo. 351; Clark v. Railroad, 127 Mo. 210; Sawyer v. Railroad, 37 Mo. 257; 2 Fetter, Carrier Passengers, sec. 480; Spencer v. Railroad, 17 A. & E. R. R. Cas. (N. S.) 166; Railroad v. Burrow, 17 A. & E. R. R. Cas. (N. S.) 683-4; Nellis on Surface R. R., 518-19; Hipsley v. Railroad, 88 Mo. 353; Hastings v. Railroad, 40 N. Y. Supp. 93; Hite v. Railroad, 130 Mo. 138; 2 Am. and Eng. Ency. Law, 746. (2) It was manifest error to admit the alleged statements of the conductor. They related to a past transaction and were not part of the *res gestae*. Ruschenburg v. Railroad, 161 Mo. 80; Koenig v. Railroad, 73 S. W. 643. (3) It was also error to admit the opinion of the witness Hannawalt. It was for the jury to determine whether the condition of the plaintiff was caused by the accident or not. Koenig v. Railroad, 73 S. W. 643; Benjamin v. Railroad, 133 Mo. 274.

*Neal & Eppstein* for respondent.

(1) The defendant did not stand on the demurrer, and the evidence of the whole case must be considered. Klockenbrink v. Railroad, 172 Mo. 683; McPherson v. Railroad, 97 Mo. 253; Eswin v. Railroad, 96 Mo. 294; Jennings v. Railroad, 112 Mo. 268; Seckinger v. Mfg. Co., 129 Mo. 590. (2) The court could not take the case from the jury if there was any evidence. And after verdict the weight of the evidence can not be reviewed. It is the same proposition as the one that the weight of the evidence does not warrant the verdict—a matter wholly for the jury. Gannon v. Gas Co., 145 Mo. 502; James v. Mut. Life Assn., 148 Mo. 1; Chouquette v. Railroad, 152 Mo. 257; Tower v. Pauley, 76 Mo. App. 287; Pitkin

v. Nat. Land & Assn., 80 Mo. App. 1. As subordinate to this contention, the defendant claims that the petition alleges specific negligence, and that the burden was on plaintiff to prove the same. The averment taken in connection with the context of the petition, or taken separately, or as isolated, is not restricted, limited or specific. It covers the negligence of the defendant either with respect to the track or in reference to the management of the cars, or in any other respect. A general charge of negligence is sufficient unless defendant moves that it be made more definite and certain, and is good after verdict. Cobb v. Railroad, 149 Mo. 135; Sawyer v. Railroad, 156 Mo. 469; Smiley v. Railroad, 160 Mo. 629; Green v. Sup. Lodge Assn., 79 Mo. App. 179. The case was tried and defended with respect to the negligence of defendant in relation to the track and cars and of the agents operating the cars on which plaintiff was a passenger. There was neither surprise nor advantage against defendant caused by the pleadings, and after verdict the pleadings can not be assailed. Black v. Railroad, 172 Mo. 177; Mack v. Railroad, 77 Mo. 232; Slater v. Supreme Lodge, 88 Mo. App. 177. In this kind of case, where a passenger is injured by a common carrier, the burden in the first instance is on the carrier to show that it is not liable. Hipsley v. Railroad, 88 Mo. 348; Dougherty v. Railroad, 9 Mo. App. 478. (3) It is argued by counsel for defendant that the conversation between the injured passenger and the conductor was incompetent. That the conductor is the agent of the carrier and is in charge of the car, is a part of the general and common knowledge and need not be shown; it may be conceded. The testimony of the conductor establishes that fact; it was not necessary to be shown. He was the vice-principal, and his statement was proper on two grounds: 1st, it was the statement or admission of the defendant properly made to the injured party who had the right to make the inquiry; 2d, it occurred at the place in sight

of the wreck and injured people, and as the plaintiff was being assisted by the conductor off the car, and was a part of the transaction, a part of the *res gestae*. The admissibility of a statement as a part of the *res gestae* is dependent upon its instinctiveness. The question of the passenger recovering from the shock was instinctive. The response was of the same character, was made so by the question. Of this the trial court was the best judge, who saw the witnesses and parties and had all the circumstances to aid his judgment. No arbitrary rule can be established with respect to what constitutes the *res gestae*. The facts of each case must determine the matter. Where there are connecting circumstances between the accident and the declarations, the statement is admissible. Harriman v. Stowe, 57 Mo. 93; Stevens v. Walpole, 76 Mo. App. 213; Leahey v. Railroad, 97 Mo. 165; State v. Kaiser, 124 Mo. 651; State v. Gabriel, 88 Mo. 631; Waller v. Railroad, 83 Mo. 608; State v. Duncan, 116 Mo. 288; State v. Lockett, 168 Mo. 480; State v. Hudspeth, 150 Mo. 12; State v. McLaughlin, 149 Mo. 19.

GANTT, P. J.—This is an action for damages alleged to have been caused to the plaintiff by the negligence of the defendant.

On the afternoon of October 8, 1900, the plaintiff while a passenger on a cable car of defendant was injured by the sudden and violent stoppage of the car near the intersection of Ninth street by Walnut street.

The petition alleges the incorporation of the defendant and its ownership of a street railway over and along Ninth street; that as such street railway company it was a common carrier of passengers for hire, charged with all the duties and liabilities of such common carrier; that at all the times complained of and prior thereto the cars and trains of defendant were propelled and operated by means of an endless or continuous cable or wire-rope, which was caused to move by machinery

driven by steam power, and which cable was grasped by a device attached to its cars called a grip which caused the cars to move with said cable or wire-rope, which grip was operated by the servants or agents of defendant who caused said grip to grasp and release said cable at the will of the operator; that defendant usually ran its cars in trains of two cars each, and the injury of which plaintiff complains was done while plaintiff was occupying the rear car of a train of two cars as hereinbefore shown; that on October 8, 1900, he entered the rear car of said train of defendant, at a point west of Walnut street, on Ninth street, for the purpose of going east to its termination; that plaintiff complied with all the requirements of defendant, and became a passenger on said car of defendant and as such occupied a seat in said car; that while lawfully occupying said seat as such passenger as aforesaid and entitled to all the rights, privileges, care and protection which defendant owed to its passengers and while plaintiff was in the exercise of due care, when said cars reached Walnut street, and while making a high rate of speed, *the said cars* by reason of the carelessness and negligence of the defendant, its agents and servants, came to an instant, abrupt, unusual and sudden stop, whereby plaintiff was thrown with great violence from his seat in said car against the stove, seats, sides and floor of the said car, by which he received and sustained great bodily injuries, to-wit, three of his ribs were broken, and he suffered internal injuries in his intestines and bodily organs, and his heart and liver were deranged and enfeebled, and his bowels partially paralyzed, and he was permanently injured, etc., for which he prayed damages in the sum of thirty thousand dollars.

The answer admitted the incorporation of defendant, and denied all other allegations in the petition, and also pleaded contributory negligence. The cause was tried, and a verdict of $3,000 rendered in favor of plain-

tiff and judgment accordingly. After motions for a new trial and in arrest of judgment had been filed and overruled, the defendant appealed to this court.

The facts developed on the trial are substantially these:

The plaintiff is about forty years old. About three o'clock in the afternoon of the eighth of October, 1900, he took a seat in one of defendant's street cars on Ninth street, intending to go to his home in Independence, Missouri. He got on the car at what is known locally as "the junction" of Ninth and Main streets. His car was going east. The next street east is Walnut street. As he was in the act of paying his fare, the train of two cars came to an abrupt and sudden stop. The plaintiff was shocked and rendered insensible at first, but recovered consciousness while the conductor and some one else were removing him from the car. The plaintiff inquired of the conductor the cause of the trouble, and was told that a coupling pin had fallen from the car into the slot rail. This evidence was objected to at the time but admitted by the court.

Peter Martin, an employee of defendant at the time, and who had worked for the defendant thirteen years, testified he was a flagman at the Walnut and Ninth street crossing, for defendant, on the day of the injury to plaintiff, and remembered the accident. He had been on duty at the crossing of Walnut street by the Ninth street cars of defendant up to three o'clock that day, when another flagman took his place. He was standing on the north side of Ninth street and on the west side of Walnut street, waiting for a car to go to Westport, or to Fifteenth and Grand avenue. Had been there only a short time. The accident happened while he stood there. The Ninth street car came up the incline on Ninth and came to a sudden stop when it hit Walnut street. The car stuck there for a few minutes. The wrecking wagon soon came. Ben Lee was the driver, and George Hall, the rope-splicer of defendant, was

there, and the other flagman. John Evans was there also in a few minutes. The car had not reached clear up on Walnut street when it stopped. The grip car stopped on the first track on Walnut street. The train was composed of a grip car and one coach. The train stopped with a jar or shock. When the wrecking wagon came, the car was shoved west, and the wreck cleaned up and the train started again. The wreck caused a delay of five minutes or possibly ten minutes. He saw one man helped out and taken to the sidewalk. He had his hand on his forehead. He saw something taken out of the slot rail. Couldn't say whether it was a bolt or a pin. ''I saw them taking it out of the slot rail, and the men took whatever it was away. I think it was one of the railroad men that took it, but don't know which one it was.'' All the cars of the Ninth street line have drawheads in each end. The coupling pins were bolts about six inches long and seven-eighths of an inch in diameter, which held the links which connected the cars.

On cross-examination he stated that the cars on Ninth street passed this crossing sometimes every two minutes, and sometimes it was fifteen minutes between cars. The cars had been running regularly on the day of the accident and there was no stoppage until the car on which plaintiff was riding suddenly stopped. No other car so stopped that day to his knowledge. There was something in the slot rail to stop the car. It was taken out so quick he didn't know what it was. He didn't take it out himself, but to the best of his recollection one of defendant's men took it out, but he didn't know which one of them it was.

There was evidence that plaintiff's fourth, fifth and sixth ribs on the right side were dislocated from their attachment to the bones of the back, knocked forward something like an inch; that his heart and spine were affected; that his bowels would not act without medicine. The evidence as to the extent and permanency of

his injuries was conflicting, and it suffices on this point to say that there is nothing in the verdict indicating that it was the result of prejudice or passion.

I. It is earnestly argued and urged by counsel for defendant that the demurrer to the evidence should have been sustained and that the circuit court committed reversible error in not so doing. This contention must be settled by a review of the testimony in the light of the law governing defendant's liability as a carrier of passengers. It is the settled law of this State that street car companies are carriers of passengers and held to the same degree of care and vigilance in preventing injuries to their passengers as is required of other railroads carrying passengers for hire, that is to say, the highest care and skill which prudent men would use and exercise in a like business and under like circumstances. [Jackson v. Railroad, 118 Mo. 199; O'Connell v. Railroad, 106 Mo. 482; Clark v. Railroad, 127 Mo. 197; Lemon v. Chanslor, 68 Mo. 340.]

In the case last cited the rule announced in Stokes v. Saltonstall, 13 Peters 181, was approved, to-wit, that "when damage or injury happens to a passenger by the breaking down or overturning of the coach, the presumption, prima facie, is that it occurred by the negligence of the coachman, and the *onus probandi* is on the proprietors of the coach to establish that there has been no negligence whatever, and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent. For the law will, in tenderness to human life and limbs, hold the proprietors liable for the slightest negligence, and will compel them, by satisfactory proofs, to repel every imputation thereof."

In Carpue v. Railroad, 5 Ad. & El. (N. S.) 747, where the injury was caused by a train running off the track and overturning the carriage in which the plain-

tiff was a passenger, DENMAN, C. J., told the jury that, "It having been shown that the exclusive management, both of the machinery and the railway, was in the hands of the defendants, it was presumable that the accident arose from their want of care, unless they gave some explanation of the cause."

In this case the defendant was the owner of and in exclusive control of the track on which it propelled its cars; plaintiff was a passenger in its cars, and while sitting in his seat he was injured by the sudden and abrupt stopping of the car; in a word, the injury arose from apparatus wholly and entirely under the control of defendant and furnished and operated by it, and such being the case we think the plaintiff made out his prima facie case of negligence against the defendant, and the burden was cast upon defendant of showing that the accident was not the result of that want of care and vigilance which the law makes it obligatory on defendant to bestow. [Hipsley v. Railroad, 88 Mo. 348.]

In Dougherty v. Railroad, 81 Mo. 325, it was said: "Without reviewing the authorities, the following proposition is clearly deducible: That where the vehicle or conveyance is shown to be under the control or management of the carrier or his servants, and the accident is such as, under an ordinary course of things, does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

Now, it requires no argument or proof to establish that an accident such as this, in the ordinary course of things, would not happen if the owners and operators of street cars use proper care in the management of their cars and the maintenance and inspection of their tracks, slots and underground crossings, and the case, therefore, in the first instance, is one in which plaintiff was entitled to the presumption of negligence,

or, in other words, had made out his prima facie case when he closed his evidence, independent of the statement of the conductor to him that the accident had been caused by a coupling pin falling into the slot-rail, and accordingly no error was committed in overruling the demurrer to the evidence, either at the close of plaintiff's case or at the close of all the evidence.

II. It is, however, urged that manifest error was committed in admitting, over defendant's objection and exception, the statement of the conductor to the plaintiff after plaintiff had been hurt in explanation of the cause of the sudden stop of the train.

Plaintiff urges it was admissible on two grounds: first, because made by the conductor, the agent of the defendant in charge of the train, to an injured passenger who had the right to make the inquiry; second, because it was a part of the *res gestae*. Considering the second proposition first, it may be said that the courts do not differ materially as to what the doctrine of *res gestae* is, but they are hopelessly variant in its application.

The *res gestae* may be defined as those circumstances which are the automatic and undisguised incidents of a particular litigated act and which are admissible when illustrative of such act, indeed must be in contemplation of law a part of the act itself. Narratives unconnected with the principal facts are universally rejected. Applying this general rule, a statement by a motorman after a child had been run over by his car and while the car was still standing in the street was rejected in Ruschenberg v. Railroad, 161 Mo. l. c. 79, 80, following Barker v. Railroad, 126 Mo. 143, and Adams v. Railroad, 74 Mo. 553.

If those cases are to be followed, and we think they should be, the admission of the statement of the conductor can not be sustained as a part of the *res gestae*. On its face it is a narrative of what had hap-

pened and the cause thereof and elicited by a question as to the cause of the trouble.

Was it admissible on the ground that the conductor was the agent and representative of the company and made the statement by authority and to a passenger who had the right to demand the cause of his injury?

This must be solved by the application of the law of principal and agent. The admission or declaration of his agent binds the principal only when it is made during the continuance of the agency in regard to the transaction then depending. This must be regarded as settled law in this State. [Rogers v. McCune, 19 Mo. 557; McDermott v. Railroad, 73 Mo. 516; Adams v. Railroad, 74 Mo. 1. c. 555-6; Aldridge v. Furnace Co., 78 Mo. 1. c. 563; Devlin v. Railroad, 87 Mo. 545; Barker v. Railroad, 126 Mo. 1. c. 148.]

Applying the rule just stated, the question arises in each case, were the statements of the agent contemporary with the transaction and illustrative of its character, or merely a subsequent *narrative of how it occurred* or an explanation of how it might have been avoided? If the latter, they are inadmissible. Considered with reference to this particular case it must be conceded that in point of time they came very quickly after the accident and wreck, but though thus soon after the collision it seems to us to be apparent it was a recital of the cause of it, and no part of the transaction while passing, and the statement for this reason falls within the doctrine announced by Judge Scott in Rogers v. McCune, 19 Mo. 557, and uniformly adhered to by this court in subsequent decisions. [Koenig v. Railroad, 173 Mo. 698.]

This admission of this evidence can not be said to be harmless. Coming as it did from the conductor of the train, it was calculated to carry conviction that the cause of the accident was the falling of the coupling pin into the slot,—a fact, if true, that tended to make

a case of negligence as between a carrier and one of its passengers, in and of itself.

We think the admission of this evidence was reversible error.

III. The contention that the instructions were too broad and should have restricted the jury to finding negligence as to the presence of a pin or bolt in the slot-rail, we think is not well taken. The cause of injury was alleged to be the sudden violent stopping of the car and the resulting shock to plaintiff. The insistence that the cause of the stop was known and, that, therefore, the burden was on plaintiff to show how the obstruction, whatever it was, got into the slot and was not shifted to defendant, we think can not be maintained. It was not a conceded fact in the trial that a coupling pin had fallen into the slot as plaintiff attempted to prove. This was strenuously controverted by defendant's witnesses. The plaintiff was a passenger. He was without fault. The sudden unusual stopping of the car shocked him and caused whatever injury he suffered. The defendant was in the exclusive control and management of its train, and of its track and underground appliances provided for the crossing of its tracks on Ninth street by its tracks on Walnut street. There was evidence that some kind of bolt or piece of iron was taken out of the slot, but whatever it was, it was taken away by defendant's own servants, and the character of it was peculiarly within the knowledge of the defendant, and the burden devolved upon it of showing how and why the sudden stop occurred.

"Where the thing is shown to be under the management of the defendant or its servants, and the accident is such as in ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose

from want of care." [Scott v. London Dock Co., 3 H. & C. 601; Clark v. Railroad, 127 Mo. 197; Guffey v. Railroad, 53 Mo. App. 462.]

The burden was on defendant to show that the obstruction was in the slot without negligence on its part, and this it undertook to do by showing its inspection of the cars and tracks. Whether it did so to the satisfaction of the jury was a matter for the jury under proper instructions.

The peremptory instruction asked by defendant was properly refused.

The other instructions given covered the issues in the case and were fair and liberal to the defendant.

IV. The only remaining point necessary to be determined at this time is the alleged error in the admission of the evidence of Dr. Hannawalt. The contention is that the jury were as competent as Dr. Hannawalt to pass on the question of whether plaintiff's injuries were the result of the shock received by him at the time of the accident.

As said in Wood v. Railroad, 181 Mo. 433, l. c. 449, "There can be no doubt that it is not allowable to permit an expert witness to give his opinion upon matters upon which men of common information are capable of forming a judgment. Many of the cases cited by appellant are clearly of this character and do not reach the point now under consideration. As said by MACFARLANE, J., in Benjamin v. Railroad, 133 Mo. 288, 'An exception is made to the general rule [forbidding witnesses to give their opinions], and persons who, by experience, observation, or knowledge, are peculiarly qualified to draw conclusions from such facts, are, for the purpose of aiding the jury, permitted to give their opinions.' "

We have so recently examined this question and expressed our opinion, in Wood v. Railroad, 181 Mo. 453, that an expert medical man, such as Dr. Hanna-

walt· was shown to ·be, was competent to give his opinion upon a hypothetical question. that an injury was the cause of a disease, or condition found in an injured person, that we must decline to do more than refer to that decision for an expression. of our ·views on this point.   On a retrial the circuit court can require the hypothetical question to be so framed as to submit those facts of which there was evidence and to require the witness to give his opinion upon the facts thus. stated, and assuming that they were true, leaving it to the jury of course to find the truth or falsity of the assumption.

For 'the error in the admission of. the statement of the conductor over the objection of defendant the judgment must be and is reversed, and the cause re-manded for a new trial.

*Fox, J.,* concurs; *Burgess, J.,* absent.