## BY THE

### ST. LOUIS KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

#### AT THE

## MARCH TERM, 1918.

---

GRACE ATKINSON, Respondent, v. AMERICAN SCHOOL of OSTEOPATHY, and CHARLES E. STILL, Appellants.

St. Louis Court of Appeals.  Opiion Filed March 5, 1918.

1. **PHYSICIANS AND SURGEONS: Malpractice: Evidence: Statements of Agent: Admissibility Against Principal.** In an action against a school of osteopathy and a member of its faculty, who, it is alleged, while treating plaintiff, negligently broke her sternum, it not being controverted that such member treated plaintiff as the agent and employee of the school, what was said either by the president or dean of the faculty of the school, while making a diagnosis of plaintiff, at the request of such defendant member, with reference to what they or either of them found to be the *then* condition of plaintiff's sternum, ribs, etc., is admissible; such statements being made in the scope of their duty and while in the actual performance thereof.

2. ———: ———: ———: **Admissions of Codefendant.** Statements of a codefendant, while treating plaintiff a day or two after the injury, to the effect that he was the "cause of all this suffering," is admissible against him.

3. **TRIAL PRACTICE: Instructions: Failure to Request.** Where the court, in overruling an objection of defendant to admissions of its codefendant, admissible as to him, stated specifically that the statement was admissible only against the latter, the court did

not commit prejudicial error in not instructing the jury, of its own motion, that such statements could be considered by them as affecting the latter defendant alone; counsel for defendant school having made no request for such instruction.

4. **EVIDENCE:** Admission of Codefendant. In an action against a school of osteopathy and a member of its faculty, who, it is alleged negligently broke plaintiff's sternum, the court properly permitted plaintiff to relate a conversation to the effect that, when she charged defendant member with responsibility for her injuries, the accusation was not denied by him.

5. ————: **Hypothetical Questions: Evidence to Support.** Every party has the right to place before the jury the scientific inferences properly deducible from such facts as the evidence tends to prove, subject to the contingency that the jury shall find such facts to be as claimed.

6. ————: ————: ————: **Expert Witnesses.** Counsel may put to an expert, after his competency has been established, a question in which the things which the evidence adduced tends to prove, and which counsel claims to have proved, are stated as a hypothesis, and the witness is asked to explain the conclusions which in his opinion result.

7. ————: **Witnesses: Experts: Cross-Examination: Reading from Books.** In an action against a school of osteopathy and a member of its faculty, who it is alleged negligently broke plaintiff's sternum while giving her treatment, it was not error to permit counsel on cross-examination to contradict a witness, by asking whether "Hulett," whom he had testified was a recognized authority, did not state that direct violence might cause depression, resulting in fractured cartilage, etc., the book being recognized and used as a text by defendant school for years, and the witness having previously thereto testified that according to the teachings of the defendant school there could be no fracture of the cartilage of the ribs.

8. ————: **Lay Witness: Opinions: Disease: Competency.** Permitting a lay witness, who had herself been a sufferer with asthma for years, to state that she had never discovered symptoms of asthma in plaintiff before entering defendant's school, was not prejudicial error.

9. **APPELLATE PRACTICE: Error in Instruction: Not Reversible Error.** In an action against a school of osteopathy and a member of its faculty, in which plaintiff alleged in her petition that defendant member broke and crushed her sternum, instructing that plaintiff claimed in her petition that defendant member "crushed, depressed, or fractured said gladiolus," etc., is not reversible error, in view of Revised Statutes 1909, section 2082; there being testimony that the gladiolus was part of the sternum, etc.

Appeal from the Circuit Court of Monroe County.—
*Hon. William T. Ragland,* Judge.

AFFIRMED.

*Frank W. McAllister, C. E. Murrell* and *Campbell
& Ellison* for appellants.

. (1) The court erred in permitting plaintiff to
testify that Dr. Laughlin told her when he treated her
that her ribs were broken like a "green stick fracture"
(Ab. 36, 105). This was hearsay and prejudicial.
Atkinson v. American School of Osteopathy, 240 Mo.
388, 356; McDermott v. Co., 73 Mo. 516, 520; Fry v.
Railroad, 200 Mo. 377, 406; Price v. Thorington, 10
Mo. 135, 140; O'Brien v. Kenney, 74 Mo. 125, 127.
(2) The court erred in admitting alleged statements
of Dr. Charley Still made after the alleged injury
without instructing the jury that they could not be con-
sidered as affecting his co-defendant. (Ab. 98, 99.)
Abbott's Trial Evidence, page 188; 2 Wigmore on
Evidence, sec. 1076, pp. 1275-6. (3) The court erred
in admitting an alleged statement of Dr. A. T. Still to
Dr. Laughlin (Ab. 38) to look for trouble right here.
"It is sunk down on it." It was hearsay and inad-
missible for any purpose. Abbott's Trial Evidence, page
188; 2 Wigmore on Evidence, sec. 1076, pp. 1275-6.
(4) The court erred in overruling the objection. to
the purported conversation between plaintiff and de-
fendant Still, and erred in refusing to strike out the
answer of the witness (Ab. 33, 35). It was a self-
serving declaration, and evidently designed to, and did,
prejudice the jury, and was inadmissible for any
purpose. Fourth National Bank v. Nichols, 43 Mo.
App. 385, 390, 394; 2 Wigmore on Evidence, page 1258;
State ex rel. Tiffany v. Ellison, 182 S. W. 997. (5) The
court erred in overruling defendants' objection to the
hypothetical question propounded to Dr. Mitchell (84,
85), and erred in refusing to strike out the answer
of the witness, because said. question as framed, was

not supported by any proof because the answer is not responsive to the question being limited to the mere experience of the witness with his own patients. (6) The court erred in permitting the witness Esther Campbell to testify that plaintiff, in September, 1901, had no indication or symptoms of asthma. She was a lay witness and not shown to have any knowledge of the disease of asthma, and incompetent to answer the question. There is a sharp conflict in the testimony as to whether the plaintiff was afflicted with asthma in September, 1901, plaintiff contending that she was not, and defendant contending she was thus afflicted. Therefore, the evidence referred to was highly prejudicial, and given by one incompetent to answer the question. Reid v. Company, 58 Mo. 421; Sharp v. Company, 114 Mo. 94. (7) The court erred in permitting plaintiff's mother to state her mere conclusions and opinion as to the plaintiff's state of health. She was asked how low would the plaintiff get. Objection was made because the question necessarily calls for conclusion. The objection was overruled, and the witness stated she would get so low she could not stand anybody to move around or be in the room. She was also permitted to state that the plaintiff suffered pain. She was not asked as to the physical indications but stated she had pain (Ab. 13, 14). This evidence was prejudicial. (8) The conduct of the plaintiff in continually and habitually stating incompetent and prejudicial matters while on the witness stand and failing and refusing to answer questions, and instead thereof, indulging in addresses to the jury, was a palpable attempt on her part to influence and prejudice the jury, and the court should have granted a new trial on account of such conduct. Wajtylak v. Company, 188 Mo. App. 260. (9) The court erred in not granting a new trial because plaintiff and her witnesses Oven, Yost and Wening were guilty of palpable perjury. (10) The court erred in refusing to grant a new trial because the evidence of defendant is overwhelming that

plaintiff did not sustain the injuries or any of the injuries of which she complains. (11) The court erred in not granting a new trial because of the misconduct of the jurors as shown by the affidavits filed with motion for a new trial as well as affidavits filed by respondents (Ab. 266, 288). Tatlow v. Grantham, 66 Mo. App. 509. (12) The court erred in giving Instruction No. 1 on the part of respondent (Ab. 256). It advised the jury that plaintiff claimed in her petition that defendant Still "crushed, depressed or fractured said gladiolus, and fractured the cartilages of the second, third and fourth ribs." Whereas the petition charged (Ab. 4) that defendant "broke and crushed plaintiff's sternum and forced the same in and upon her lungs and bulged and forced out the cartilages of her ribs on the right side of her body into an unnatural position." State ex rel. v. Ellison, 195 S. W. 722, 724. (13) The court also erred in giving instructions on behalf of respondent Nos. 2 and 4 for the same reason. State ex rel. v. Ellison, 176 S. W. 13. (14) The court erred in giving plaintiff Instruction No. 6 because it defines the word "negligently," and the words "ordinary care" to mean such care as an ordinarily prudent person would exercise, whereas this defendant is to be tested not by conduct of an ordinary person, but by the conduct of the ordinary osteopathic physician. Atkinson v. American School of Osteopathy, 240 Mo. 338. (15) The verdict is excessive. (16) The court erred in permitting plaintiff to ask the witness Laughlin the question (178) showing what Henor had written in his book. It was hearsay. Railroad v. Yates, 73 Fed. 587; McDonald v. Railroad, 219 Mo. 468, 492; Brown v. Company, 141 Mo. App. 382, 384, 17 Cyc. 421.

*John Whiteside, W. W. Barnes* and *J. H. Whitecotton* for respondent.

(1) The court did not err in the admission of the testimony of Dr. Laughlin as contended by appellant for the reason that it stands in the nature of an ad-

mission by an agent, when in the line of duty, and as such is an admission of defendants. The authorities cited by appellants do not support their contentions. Atkinson v. American School of Osteopathy, 248 Mo. 338, 520; Phillips v. Railroad, 211 Mo. page 419, 441; Malecek v. Railroad, 57 Mo. 21. (2) The appellants are not in a position to complain of the nonaction of the court in not instructing as to the alleged statement of Dr. Charles Still as no instruction was asked by the appellant school. The court announced when the testimony was admitted that it was admitted because competent against defendants, Still, (Abst. 98). (3) This testimony was admissible on the ground of it being in the nature of an admission because not denied when made. The language used by the plaintiff charged Still with liability for her condition and injury, and was such as called for a denial of any liability by him which was not made at the time shown by the conversation. Coffey v. Tifony & Howard, 192 Mo. App. 455, 474. (4) The testimony of Esther Campbell as to the health of plaintiff as to asthma violates no principle of law. She first gave the facts in full and then stated that she never discovered any symptoms of asthma. ''A non-professional witness may give his opinion as to the physical condition of another as to health with a full statement of the facts upon which he bases his conclusion,'' as was done in this case. Crowe v. Peters, 63 Mo. 429; Moore v. Moore, 67 Mo. 192; Norris v. R. R. Co., 239 Mo. 711. (5) The same is true as to the objections to the testimony of plaintiff's mother.

BECKER, J.—This suit was instituted April 17, 1906, in the circuit court of Adair county. Plaintiff seeks to recover from the defendants for malpractice in treating her by the method or system commonly known as Osteopathy. Plaintiff took a change of venue to Putnam county where a trial was had and a judgment resulted in favor of plaintiff and against the defendants in the sum of $10,000, from which an appeal was taken

by the defendants to the Supreme Court of Missouri (sec. 240 Mo. 338, 144 S. W. 816), where the case was reversed and the cause remanded. Thereafter the venue was changed to Clark county and again to Monroe county, in which latter county the case was tried twice, the first trial resulting in a hung jury, and in the second trial plaintiff recovered a judgment in the sum of $5000, from which, after an unavailing motion for new trial, defendants bring this appeal.

A comprehensive, detailed statement of the facts in this case is found in connection with the Supreme Court's opinion when this case was there, to which reference may be had in that with a few minor changes, which will be noted in this opinion, the facts are identical with the case as we have it before us.

The amended petition on which the case was tried alleges that the American School of Osteopathy is a Missouri corporation owning a large amount of real estate and conducts a school whereby it teaches the science of Osteopathy, and has a regular organized faculty composed of teachers of such science conducting said school, and at the same time the members of the said faculty practice the science of curing and healing the sick and afflicted, and that it was the duty of the said faculty to treat and operate on students in attendance of said school without charge; that defendant, Charles E. Still, was a member of said faculty duly authorized to practice his profession and authorized to treat students of said school for any disease that they may have or contract during their attendance at said school. The petition then alleges that plaintiff became a student in the defendant school about October 1, 1901, and paid her tuition and attended the school until June, 1903, when she graduated and became a doctor of Osteopathy; that at the time she entered the school she had a slight affection of the nasal passages that slightly affected her breathing; that the defendant, Charles E. Still, examined her and undertook to treat her and continued to do so until some time in April,

199 M. A.—17

1902, when he "carelessly, negligently and unskillfully treated and manipulated plaintiff's body in so treating her for said maladies that he negligently and carelessly broke and crushed plaintiff's sternum, commonly known as the breastbone, and forced the same in and upon her lungs and bulged and forced out the cartilages of her ribs on the right side of her body into an unnatural position;" that as a direct result thereof, "she became sick and affected and has ever since suffered with asthma, uterine and rectal troubles, loss of flesh and suffered much bodily and mental pain and her general health has been permanently injured and she has been incapacitated from practicing her said profession or to earn her livelihood."

The defendants filed separate answers, Charles E. Still averring that he was and is an Osteopathic physician and that the plaintiff, when she entered the school as a student and before that time, was affected with asthma; that during the time she was a student he treated her several times, always with his best skill and ability and denied each and every other allegation, and for further answer alleged the pendency of another suit on the same cause of action by plaintiff against said defendant. The answer of the American School of Osteopathy is a general denial. Plaintiff's reply alleges that a suit had been filed by the plaintiff against the defendant, Charles E. Still, but that it was not a suit between the same parties nor on the same cause of action, and that said suit had been dismissed and was not then pending.

The bill of exceptions which we have before us covers more than five hundred pages. For the purposes of this case we set out such of the evidence adduced as we think necessary for a proper understanding thereof.

Plaintiff herself testified that she had gone to Kirksville to study Osteopathy in September, 1901, when she was about twenty-nine years old. At that time she was a little run down from nursing but was in good health and had never suffered with any physical

ailments except measles; that she did not have asthma when she entered the defendant school as a student; that during the two years which she attended the defendant school Dr. Harry Still gave her two or three treatments, immediately after she had become a student, after which time the defendant, Dr. Charles E. Still, took her in charge up until the time of her alleged injury in April, 1902; that on the day she claimed to have received the injuries complained of she testified that the defendant, Charles E. Still, came into her room and said: "Good morning, Miss Atkinson, how are you this morning? I said, 'Dr. Charley, you are not doing me a bit of good. I am getting worse.' He said, 'I will take that out of you or I will break your neck,' and with that he put his knee against the breastbone and by putting his arms around the back he pulled with his hands and pushed with his knee, and drew me forward like that, and I said, 'Dr. Charley, you crushed my sternum in the breastbone.' He said,' I guess not.' I said, 'You did, I know you did,' and he said, 'Oh I guess not.' I said, 'Well I know you did,' and he went around to the back and felt the condition and he said, 'I guess you will come out all right. I didn't realize you were so small. I have just been treating a two-hundred pounds woman, and didn't realize the weight I was putting on you.' " She said that she felt the crushing of the bones but that there was not so much pain at the time; that it was the following day that she suffered much pain; that she kept going about the next day but suffered, "long shooting pains" "darting pains" all through the chest on her right side. On the second day she got up in the morning and went to attend one of the classes but she was suffering pain all the time and had to leave during the second class on account of the pain; that in the evening of said second day her roommate went for the defendant, Dr. Charles E. Still, who came and gave her treatment intended to relieve her; that when the defendant finished he said: "Miss Atkinson, what makes me feel so badly is to think I am the cause

of all this suffering;'' that the defendant gave her two treatments the day thereafter but that she did not receive much relief therefrom; that defendant then suggested he send for his father, Dr. A. T. Still, who was the founder and president of the defendant school; that said Dr. A. T. Still, accompanied by Dr. George Laughlin, a doctor of Osteopathy and a member of the faculty of the defendant school, came together and examined plaintiff, during the course of which Dr. Laughlin said: ''The second, third and fourth ribs are broken like a green stick fracture;'' that Dr. Still said to Dr. Laughlin: ''The trouble is here, George. The trouble is right here, that is sunk down on there, get your hands right on the back of the three ribs here, but especially the three ribs and push it out and shove the thing up away from the chest, it is sunk down on it.'' She said that the treatment given her by the defendant, Still, had crushed the breastbone and and that the breastbone was lying flat back on the lungs and was crushed back and three ribs were broken and that such an injury would cause asthma; that in the fall of 1902 she had her first attack of asthma and that it grew worse and worse until when she graduated from the school she was having repeated attacks of asthma which continued off and on until the years 1905 and 1906, when she was not able to do anything; she was confined to her bed the greater part of the time; that she was again very ill in the summer of 1907; that her weight had fallen off from 102 pounds, which was her weight at the time she attended the school, until she weighed less than 80 pounds, and in 1907 her weight was but 60 pounds. At the time of the trial the condition of her chest was much better than it had ever been, though not normal, and in her opinion never would be.

Dr. Polmeteer, a doctor of Osteopathy, testified that he examined the plaintiff in the latter part of 1902 and found the middle part of the sternum lying down upon the lung, and stated that in his opinion it was caused by dislocation of some of the ribs; that

the cartilages of these ribs seemed to be raised or bent.

Dr. Ash testified for the plaintiff that he was a practicing physician with 22 years' experience; that he had examined plaintiff and found evidences of injury to the thorax on the right side between the second and fifth ribs, and there was also a bulge of three ribs which was evidence of an injury to or the fracture thereof. In his opinion the injury was caused by external violence and that such injury could not have resulted from asthma.

Dr. F. O. Blattner testified for plaintiff that he was a practicing physician and had examined plaintiff and found an enlargement of the right side beginning at the sternum to the end of the intercostal cartilage, where it is connected with the ribs from the second to fourth. He stated that he found a slight depression on the sternum, and that external violence in his opinion was the cause of that condition, and that no disease would cause that character of deformity.

On cross-examination he stated that he had seen six cases of broken breastbone and that one case in particular was that of a man who was up and about though his breastbone had been broken three days before; that it is possible to break the breastbone without causing immediate great pain.

Dr. F. Mitchell testified for plaintiff that he was a physician and surgeon of 40 years' experience and had experience with asthma. In answer to the hypothetical question based upon testimony adduced with reference to plaintiff's alleged injury, stated that in his opinion an injury so inflicted could be the cause of asthma.

Dr. Jost was a witness for plaintiff and testified that she was a roommate of plaintiff for a time when they were both attending the defendant school; that she was attending the class in manipulation, which class was being instructed by the defendant, Charles E. Still, and heard said defendant while talking about rib lesions and vetebra lesions, about the chest and ribs

being distended in front, say: "You must not give a treatment and put your knee in the chest like this, because I had a patient that I did that way and I fractured her ribs," and that the defendant then turned around to the witness and said: "You remember the case, that Atkinson girl;" she had seen plaintiff having attacks of asthma and had seen her at times when she was suffering a great deal of pain and had to sit up in bed at nights and that when plaintiff was having an acute attack, as she often had for several days at a time, the plaintiff suffered excruciating pain; that she had examined the plaintiff and found her three ribs were bulged out and that these ribs pressed in upon plaintiff's lung; that the condition of plaintiff's chest was not the result of asthma but was in her opinion caused by external injury.

Mrs. Wenig testified she was a practicing Osteopath and graduated in the same class with plaintiff from the defendant school, and that she had been a roommate of the plaintiff; that she learned of plaintiff's injury the same day it occured as she had examined plaintiff's chest and found at that time a depression at the union of the first and second bones of the breastbone, and second, third and fourth ribs on the right side prominent and bulging at the breastbone and that they were bent at a sharp angle; that she made this examination on the day of the alleged injury and in the evening thereof and in the room occupied by plaintiff and the witness; that the plaintiff had extreme pain the following day; that she heard the defendant, Charles E. Still, say to plaintiff when he was treating her after the injury: "What makes me feel so badly Miss Atkinson, is that I am the cause of all this suffering," and also heard him say, "just before giving this treatment I had treated a woman of about two hundred pounds and I did not realize that I was using so much force and strength in treating this little woman."

Another witness for plaintiff was Dr. Anderson, who testified that he was a physician and connected

with Dr. Hay's institute for the treatment of asthma; that he knew plaintiff since the year 1897: that she was then nursing Mrs. Campbell in Buffalo, New York, and that during that time, so far as he knew, plaintiff was a healthful woman and free from mental or physical ailments.

There were other witnesses who testified for plaintiff that she was in apparent good health about the time of the fall of 1901 when she went to attend the defendant school of Osteopathy.

On behalf of the defendants there was abundant testimony which tended to prove that no violence or any injury was done the plaintiff by the defendant, Charles E. Still, and also evidence which tended to prove that the plaintiff was afflicted with asthma when she came to Kirksville in 1901, and that this asthmatic condition progressed until plaintiff became a confirmed asthmatic and that the physical deformities and disease ascribed to the alleged injury in plaintiff's petition were the natural affects of asthma.

Defendants also adduced expert testimony to show that there were no present signs of the plaintiff's sternum or ribs having been fractured and that immediate collapse and very severe pain would be the immediate result of an injury such as plaintiff alleges she received at the hands of the defendant, Charles E. Still.

It will be noted that no question is made either in the pleadings or evidence as to the skill or learning of the defendant, Dr. Charles E. Still, in his profession of Osteopathy.

The defendants allege it was error to permit plaintiff to testify that Dr. George Laughlin told her at the time he was making his diagnosis preparatory to giving her a treatment that her ribs were broken like, "a green stick fracture," on the ground that such testimony was hearsay and prejudicial. But we do not concur in that view. Dr. Laughlin, as well as Dr. A. T. Still, visited the plaintiff at the request of the defendant, Dr. Charles E. Still, a day or two after

plaintiff met with her alleged injury. Dr. A. T. Still was at the time the president of the defendant school and Dr. Laughlin was dean of the college and a member of its faculty. This evidence was admitted on the ground that the doctor was the agent of the defendant and visited plaintiff at said defendant's request and for the purpose of treating the plaintiff. What Dr. Laughlin said at the very time he was so examining plaintiff as to what he found with reference to plaintiff's then condition, under the circumstances of this case, is admissible. Nor was it error to admit the alleged statement by Dr. Laughlin of the kind and character of fracture he found, namely that the break was like "a green stick fractured." A careful reading of the opinion of the supreme court, when this case was before it, clearly shows that the learned trial judge properly construed it on the point in question and allowed the witness to testify only as to what the doctor had said with reference to the condition he found the plaintiff in at the time he made his diagnosis, but did not permit the witness to state what the doctor had said as to what *in his opinion had caused plaintiff's condition.* The record in the former appeal on this point shows that plaintiff had been permitted to testify not only that Dr. Laughlin had stated that plaintiff's second, third and fourth ribs were broken, but in addition that such injury was *"caused by Dr. Still's treatment"* (Italics ours). It was the admission of that part of the statement which we have italicized that the supreme court held was reversible error, because while Dr. Laughlin was the agent of the defendants to treat the plaintiff, he was not their agent to talk about past occurrences and his remarks concerning the *cause* of plaintiff's injury was not a part of the *res gestae.* The *cause* of her condition was the real question in issue.

It is almost trite to restate the rule that he who employs or permits another to do an act in his place as agent is chargeable by such acts as are done under that authority, and so too, bound by admissions made

by such agent in the course of exercising that authority. In the instant case the defendants do not controvert the assertion that the defendant, Still, treated the plaintiff as the agent and employee of his codefendant, American School of Osteopathy, and we hold that if as testified to by plaintiff, Drs. A. T. Still and Laughlin called on plaintiff at the request of said defendant, Still, for the purpose of examining plaintiff and diagnosing her case and determining her then condition it clearly follows that what either of said doctors said, at the time and while they were making such examination, with reference to what they or either of them found to be the then condition of plaintiff's sternum, ribs, etc., is admissible, such statements being made in the scope of their duty and while in the actual performance thereof. Such statements are also admissible as against the defendant school on the ground that Dr. A. T. Still was president and Dr. Laughlin dean of the said defendant school at the time and according to defendant's testimony whatever treatments they gave plaintiff were given her in their capacity as such. [See Atkinson v. School of Osteopathy, 240 Mo. 338, l. c. 356, 144 S. W. 816.]

The defendants complain that it was error to admit the alleged statements that defendant, Still, while treating plaintiff a day or two after she received her alleged injury, had said: "What makes me feel so badly, Miss Atkinson, is that I am the cause of all this suffering," and: "Just before giving this treatment I had treated a woman of about 200 pounds and I did not realize that I was using so much force and strength in treating this little woman." The record shows that objection thereto was made solely on behalf of the defendant school and, on the ground that it was "hearsay and not part of the *res gestae*," whereupon the court ruled: "Being competent as to the other defendant, objection overruled." The defendant, by counsel, then objected to the admission of such testimony on the ground it was "hearsay and plaintiff

having elected to sue both, not admissible against either.'' This latter objection was overruled.

Clearly, we think, the admissions were admissible as against the defendant Still, and under the state of the record in this case it is not necessary that we decide whether the statements would have been admissible against the defendant school. The learned trial judge in overruling the objection of the defendant school stated specifically that he held the statement admissible only as against defendant Still. The court did not commit prejudicial error in not instructing the jury, of its own motion, that such statements could be considered by them as effecting the defendant, Still, alone, counsel for defendant school having made no request for such an instruction.

Defendants next assign as error that the plaintiff was permitted against their objection to testify as to a purported conversation between herself and defendant Still, on the ground that such testimony was a self-serving declaration and evidently designed to prejudice the jury, and that such alleged conversation was inadmissible for any purpose. The gist of the alleged conversation which was thus admitted was that plaintiff had therein charged the defendant, Still, with being responsible for her alleged injuries and resultant condition and such charge or accusation was not at the time denied by said Still. It is evident that the conversation was admitted under the rule *qui tacet consentire videtum,* and though this ancient maxim is subject to certain qualifications and conditions, and while we have in mind ''that nothing can be more dangerous than this kind of evidence'' (Phillips v. Towler's Adm'rs, 23 Mo. 1. c. 403), we are constrained in the instant case to hold that under the circumstances as shown by the record before us the learned trial judge properly permitted plaintiff to state the conversation complained of. Plaintiff and defendant, Still, were alone and said defendant was under neither fear nor restraint nor does it appear that he was physically disabled from answering. If plaintiff's

testimony·is to be credited said defendant not only *did not* deny the charge, but when asked: "What are you going to do for me?" replied, "What do you want? I have got seventy-five cents if that will do you any good;" then offered to give plaintiff a position as nurse in the school and when plaintiff told him she was not strong enough to take such a position he offered to make her matron of the hospital, which proferred position plaintiff, according to her testimony, declined because the condition of her health would not permit her to accept so great a responsibility and suggested instead that said defendant give her a thousand dollars, which defendant declined to do and finally told her: "Sue me if you like . . . sue me, sue me, but you will not get ten cents."

Plaintiff charging said defendant with having injured her by his treatment was certainly a fact concerning which he was immediately concerned and a charge which he presumably understood and comprehended and whether the facts embraced in the charge were true or not no one probably. knew better than he. Said defendant at the time of the conversation, being face to face with plaintiff, such a charge would properly and naturally call for some action in reply from men similarly situated and he was in such a position that he was at liberty to make a reply, if he did not intend to admit it. [Greenleaf on Evidence (16 Ed.), sec. 198; Banks v. Nichols, 43 Mo. 385; See, State ex rel. Tiffany v. Ellison (Mo.), 182 S. W. 996 and cases there cited.] The conversation was properly admissible as against defendant Still and whatever inference his silence under these circumstances may have warranted, was subject to denial by defendant or any explanation in rebuttal by circumstances showing that the silence was due to other motives. [2 Wigmore, Evidence, p. 1261.]

Defendants next assign as error that Dr. Mitchell, a witness for plaintiff, was asked a hypothetical question predicated upon assumed facts upon which the witness was asked whether or not, "in your opinion

would this injury so inflicted have been calculated to produce said asthmatic condition in the patient?'' To which the witness answered: "In mine, yes, sir.'' After the answer had been given defendants made the following objection: "Defendants object to the question and answer because—object to the question, because no facts upon which to base it, and because it does not include all the facts in testimony, and object to the answer, because it is limited solely and entirely to a personal experience of the witness.'' Defendants' counsel cite us no authority on this point.

We have carefully examined the question and find that it properly covers all the essential facts as appear from the evidence given in support of plaintiff's case and contains no assumed fact not warranted by the evidence. In fact the question presupposes a state of facts more favorable to defendants than necessary to meet full compliance with the rule. Every party has the right to put before the jury the scientific inferences properly deducible from such facts as the evidence tends to prove and subject to the contingency that the jury shall find such facts to be as claimed. The rule is that the court will permit counsel to put to the expert, after his competency has been established, a question in which the things, which the evidence adduced tends to prove, and which counsel claims to have proved, are stated as a hypothesis, and the witness is asked to state and explain the conclusions which, in his opinion, result. Then if the jury should find that the facts assumed in the question have been proven by the evidence, they may use the technical information and instruction obtained from the expert in determining the ultimate facts; but if they should find that the facts assumed in the question are not true, then of course the opinions based on them should be wholly disregarded. [11 R. C. L. 578; Russ v. Railroad Co., 112 Mo. 45, 20 S. W. 472; Hicks v. Railroad Co., 124 Mo. 115, 27 S. W. 542; Root v. Railroad Co., 195 Mo. 348, 92 S. W. 621; Lyons v. Street Ry. Co., 153 Mo. 143, 161 S. W. 726.] As for the objection that Dr. Mitchell's

answer is limited solely and entirely to his personal experience, the point is clearly without merit. [Wood v. Street Railway Co., 181 Mo. 433, 81 S. W. 152; Redman v. Street Ry. Co., 185 Mo. 1, 84 S. W. 26.] We hold the objection to the hypothetical question, as well as the answer thereto, were property overruled.

We come now to the assignment that the court erred in permitting counsel for plaintiff to ask the witness, Dr. Laughlin, the question as to whether or not Hulett (whom the witness had already testified was a recognized authority among Osteopaths) in his book did not make the statement that, "direct violence may cause depression, in which case there is likely to be a fractured cartilage—occasionally. the row of cartilages on one side will be more prominent than those on the opposite?" The objection made by learned counsel for defendants is that it is "hearsay." Hulett's book from which the statement was read, was a book recognized and used as a text book by the defendant school for years, and the witness in question had so stated and previously thereto had testified that according to the teachings of the defendant school there could be no fracture of the cartilage of the ribs. There was therefore no error in submitting the question. It is permissible on cross-examination to read to the witness statements contradictory to his opinions, found in books which he admits to be authoritative, and to ask him to explain the contradiction. This practice is allowed on the theory that the books are referred to merely to test and discredit the knowledge of the witness. [11 R. C. L. 590; Greenleaf on Evidence, (15 Ed.), p. 579; McDonald v. Ry. Co., 219 Mo. 468, 1. c. 492, 118 S. W. 78, and cases there cited.]

Esther Campbell, a witness for plaintiff, was permitted to testify that she had never discovered any indications or symptoms of asthma in plaintiff from 1898 to September, 1901, the month in which plaintiff entered the defendant school as a student. This is assigned as error. Witness was sixty-two years old and had been an asthmatic for years and for the greater

part of the time from 1898 to 1901 witness had employed plaintiff as her nurse. She stated that plaintiff, during all that time, was never sick—had only an occasional headache or bilious attack. She further stated that in 1905 plaintiff was at her home and suffered with asthma—had two doctors in attendance on plaintiff; that plaintiff was very sick and when plaintiff left her home to go to Kirksville in that year she had to be accompanied by a trained nurse. Witness stated further that "as to the condition of plaintiff's chest, ribs or sternum, not being a physician, I cannot answer that question."

While it is undoubtedly the rule that a lay witness will not be permitted to attempt a diagnosis, yet in the instant case and under the particular circumstances herein, and in view of the fact that the witness herself for years was a sufferer with asthma, we hold that the admission of the statement that the witness saw no indications or symptoms of asthma in plaintiff during the period preceding plaintiff's going to Kirksville, was not prejudicial error. [See Norris v. Ry. Co., 239 Mo. 697, l. c. 711, 144 S. W. 783; Kropp v. Ins. Co., 143 Mich. 369, 106 N. W. 1107.]

As to the instructions, it is alleged as error that No. 1, as well as Nos. 2 and 4, given on the part of plaintiff, advised the jury that plaintiff claimed in her petition that the defendant, Still, "crushed, depressed or fractured said gladiolus and fractured the cartilages of the second, third and fourth ribs;" whereas the petition charges that defendant, "broke and crushed plaintiff's sternum and forced the same in and upon her lungs and bulged and forced out the cartilages of her ribs on the right side of her body into an unnatural position." Learned counsel for appellants cite us State ex rel. Central Coal & Coke Co. v. Ellison, et al. (Mo.), 195 S. W. 722, and State ex rel. Nat'l Newspaper Ass'n v. Ellison, et al. (Mo.), 176 S. W. 13, and Eads v. Galt Telephone Co. (Mo. App.), 199 S. W. 710, as authorities that what appellants here complain of in said instructions is reversible error. We do not

agree with this interpretation of these cases. In each of these cases the error complained of was one affecting the question whether the acts of negligence which the instructions required the jury to find, were sufficient when viewed in light of the acts of negligence charged in the petition and in light of the evidence adduced in the case; but the question as to whether the rule laid down in each of these cases should be applied in all its strictness when considering the sufficiency of a statement of injuries in an' instruction which are set out therein as and for those which are alleged in plaintiff's petition is not discussed.

An instruction which purports to state what a petition claims are the injuries alleged to have been sustained by reason of any negligent act or acts, should correctly set out such alleged injuries. However, when through oversight or mistake the exact language of the petition is not used in describing such alleged injuries, an appellate court will view an error of this kind in light of section 2082, Revised Statutes of Mlissouri, 1909, and determine whether in the given case the matter complained of is error which materially affects the merits of the action; and that would be the case even without any legislative enactment. [See Trainer v. Sphalerite Min. Co., 243 Mo. 359, 1. c. 371, 148 S. W. 70.] It is not every error that is prejudicial and "reversible error excludes the consideration of any error or defect not affecting the substantial right of the complaining parties." [Shinn v. United Railways Co., 248 Mo. 173, 154 S. W. 103; Revised Statutes of Missouri, 1909, sec. 1850.] Just how or wherein the defendants were or could have been prejudiced by the matter complained of is not set out either in the point as made in the brief or in the argument for said defendants who are appellants here. The difference in the wording is more apparent than real. It is true the word "gladiolus" is used in the instruction instead of the word "sternum," which is used in the petition, but the record is replete with expert medical testimony in which the statement repeatedly appears that the

"*gladiolus*" is a part of the "*sternum*," and there is testimony also that the "bulging and forcing out the cartilages of her ribs on the right side of her body into an unnatural position" was tantamount to saying that the rib had in point of fact been "fractured." At best in view of the entire record in this case we can view the objection only in the light of a technical one and we are mindful of the fact that in this case the alleged injuries were suffered in April, 1903, and the case has been tried before a jury three times as well as having been reviewed on appeal by our supreme court. While the said instructions are unfortunate in their wording, we hold the matter complained of does not, in the instant case, amount to reversible error.

There are several other points of error brought here. We have carefully examined into each of them and find them without substantial merit and it is not necessary to burden this opinion with a discussion of them.

Finding no prejudicial error and the judgment being for the right party is to accordingly affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.